GULF, M. & N. R. Co. *v.* BROWN.[*]

(Division B. Feb. 23, 1925.)

[102 So. 855.　No. 24519.]

1. RAILROADS. *Instruction on burden of proof held error.*

In a suit for damages for a personal injury inflicted by the running of a railroad train at a public crossing where the facts are all in evidence, it is error to instruct the jury that "the circumstances

of the accident must be clearly shown and the facts so proven' must exonerate the company from blame; otherwise the railroad company is not relieved from liability." Where the facts are all in evidence, the jury must determine the question of liability from' the facts, and such facts must show negligence on the part of the railroad company.

2. RAILROADS. *Instruction on care required of passenger in automobile approaching public railroad crossing held error.*

In a suit for personal injuries growing out of a collision between an automobile in which the plaintiff was riding and a train at a public crossing, it is error to instruct the jury that the plaintiff might rely upon her husband to manage and control the automobile, and that she was not required by law to stop before going upon the railroad track. A passenger riding in an automobile approaching a public railroad crossing must exercise reasonable care, according to the circumstances existing at the time, for her own safety and do what a person of reasonable caution and prudence would do under the circumstances.

---

*Headnotes 1. Railroads, 33 Cyc., p. 1129; 2. Railroads, 33 Cyc., p. 1017.

APPEAL from circuit court of Newton county.

HON. G. E. WILSON, Judge.

Action by Mrs. Bonnie Jean Brown against the Gulf, Mobile & Northern Railroad Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

*Flowers & Brown, Byrd & Byrd* and *C. L. Hester,* for appellant.

As to the rights and duties of travelers at highway railroad crossings, see *Memphis, etc., R. R. Co.* v. *Mitchell,* 52 Miss. 808; *V. & M. R. R. Co.* v. *Alexander,* 62 Miss. 496; *Memphis C. R. Co.* v. *Jobe,* 69 Miss. 452, 10 So. 672; *A. & V. R. R. Co.* v. *Davis,* 69 Miss. 444, 13 So. 693; *Jobe* v. *Memphis C. R. Co.,* 15 So. 129; *Winterton* v. *I. C. R. R. Co.,* 73 Miss. 831, 20 So. 157; *I. C. R. R. Co.* v. *McLeod,* 78 Miss. 334, 29 So. 76, 52 L. R. A. 594; *Dean* v. *Railroad Co.,* 129 Pa. 514, 18 Atl. 718, 6 L. R. A. 143;

*Smith* v. *Railroad Co.*, 87 Me. 350, 32 Atl. 967; *Murdock* v. *Railroad Co.*, 77 Miss. 487, 20 So. 25; *I. C. R. R. Co.* v. *Bethea*, 88 Miss. 117, 40 So. 813; *Hopson* v. *K. C. M. & B.*, 87 Miss. 789, 40 So. 872; *Y. & M. V. R. R. Co.* v. *Williams*, 114 Miss. 236, 74 So. 835; *Davis* v. *McCullers*, 126 Miss. 521, 89 So. 158; *Gulf & Ship Island R. R. Co.* v. *Adkindson*, 117 Miss. 118, 77 So. 954; *Schofield* v. *C. M. & St. P. R. R. Co.*, 114 U. S. 615, 29 L. Ed. 224, 225; *Improvement Co.* v. *Stead*, 95 U. S. 161, 24 L. Ed. 403; *Railroad Co.* v. *Houston*, 24 L. Ed. 542, 95 U. S. 697; *M. P. R. Co.* v. *Freeman*, 174 U. S. 739, 43 L. Ed. 1014; *Elliott* v. *C. M. & St. P. R. R. Co.*, 150 U. S. 245, 37 L. Ed. 1068, 1071.

One who knowingly goes upon a railroad track at a highway crossing where trains are accustomed to pass without taking any precautions to ascertain whether a train is approaching and is struck by a train is guilty of negligence, in the absence of invitation or misleading conditions created by the railroad company.

While the test is whether the traveler behaved as a reasonably prudent and careful person would have behaved, it has been adjudged that to go upon a railroad crossing without taking any precautions whatsoever to ascertain whether a train is dangerously near is gross negligence, as our court has affirmed, is negligence as the supreme court of the United States has held, the latter court having had no occasion to classify negligence into degrees. A reasonably prudent man approaching a highway crossing will look for trains. He knows trains are continually being run over the crossing.

If a locomotive is nearby, in plain view, and one says he looked in the direction of it from him and was looking for it or to see if it was there but did not see it, then one or two conclusions must be adopted: (1) he swears falsely when he says he looked or, (2) he saw it and chose his course in the face of the known conditions. Wharton's Negligence. It is just as much the traveler's duty to be careful after he discovers the conditions as it

is to discover them. And it is just as much his duty to ascertain the conditions as it is to protect himself after he is fully informed. If he does not look, he is negligent, if he does see but does not heed, he is negligent. The same observations may be made as to the duty to listen.

The traveler can always know whether conditions are favorable or fatal to seeing or hearing. He can know whether either is sufficient or whether both are sufficient. If the track can be seen in both directions his eyes will tell him; if he cannot see far enough to find out whether a train is dangerously near he must listen. If conditions are such as to make it impossible for him to see or hear he should stop.

Unless there is some immediate misleading circumstance or condition no instance can be conceived where one would not be guilty of negligence in going upon a crossing in front of an approaching train. The peculiar conditions that may remove the conclusive imputation of negligence are illustrated by the *Crominarity case*, 86 Miss. 464, 38 So. 633, and by the *Hopson case, supra.*

As to the gross negligence of H. N. Brown, the driver of the car, measured by the established rules his conduct makes him clearly guilty of the grossest negligence. The track was straight, was elevated on a dump from four to fifteen feet high; was entirely familiar to him; he had been crossing it for eighteen years and owned the property adjacent to the crossing; for months he had been accustomed to cross it twice a day; there was no obstruction after a point fifty to seventy-five feet from the track, was passed. He says it was raining, but he saw the car that just previously passed over the track when he was at least one hundred fifty feet from it. His witness, Kirby, saw the train three-quarters of a mile away. He went up a slight incline to get on the track and his car was moving slowly, under control. He could have stopped within five or six feet. When he was within ten feet of the track the train was necessarily not more than forty feet away, standing fourteen feet high and

emitting smoke and steam. He says he looked but did not see it, listened but did not hear it. If he looked up the track north, he necessarily saw it because it was there. If he could see a Ford car one hundred fifty feet away and Kirby and Watkins could see the train three-quarters of a mile away, he could see a locomotive fifty feet. There is no escape from the conclusion either (1) that Brown saw the locomotive and tried to beat it across or, (2) that he did not look or listen or take any precautions.

As to the precautions taken by Mrs. Brown, the plaintiff, as the car approached the track, she was on the front seat, by the side of her husband, at his right. The train approached from her side. The wind was blowing the rain against the back of the car. The boys were trying to put a coat over a window in the back where the isinglass was broken out. The side curtain at Mrs. Brown's right was loose at the top, leaving an opening through which she could see. She knew the car was approaching the crossing. The plaintiff admits that she rode on the crossing without taking any precautions whatsoever for her own safety, when she was aware that she was approaching the crossing and when she was in a position in the car to see clearly, in fact, in better position than anybody else.

As to the peculiar character of plaintiff's contributory negligence, it is a thing to be kept in view that the mistake was not in the operation of the car. What they needed to save them was information. The information was staring them in the face but they would not see it. What plaintiff failed to do was to look. If she had looked she would have seen. The object was there in plain view, close at hand. If she had seen it she would with the swiftness of thought have told her husband. He would not have refused to stop. He drove his car against the side of the front end of the locomotive. The hood stuck under the draw-head from the side. If the plaintiff had warned her driver when the car was six feet from the track she would have saved herself and family. If either

had looked all would have been saved. But neither looked. They moved as the blind move. Here was a negligent omission without which the injury would not have occurred.

As to the duty of a guest riding in a private vehicle to exercise care for her own safety, whatever it may be, if she has any duty whatever, it was not performed by the plaintiff here. It is not claimed in the declaration that she did anything at all. On the witness stand she admitted that she did nothing at all. Courts have differed as to the kind and degree of care and caution that should be exercised by one riding in a private conveyance driven by another who is not an agent or servant of the person who conduct is in question. But very few have gone to the extreme of saying that such person may close eyes and ears and take no thought for her own safety when she is in position to see and hear and is acquainted with the location and conscious of the approach to a position of peril.

An English court spoke in *Thorogood* v. *Bryan,* and said that passengers in a vehicle were in a way identified with the driver. This decision was criticized and later overruled. That case represented an effort to find a way to impute to the passenger the negligence of the driver. It was never adopted in this country. But the courts have recognized here that there is necessarily something wrong with any rule of liability that relieves the person in a private vehicle of all duty to exercise care in his own behalf. Such persons should not be treated as a piece of freight. If the guest has the right to rely upon the driver why is not the driver his representative? If he has selected the driver of the vehicle as his representative why is he not bound by the former's conduct?

It is an anachronism in the law that will allow this peculiar exemption, this stripping one's self of all duty and responsibility and at the same time providing for no representative. He does not represent himself and nobody represents him. He is a floating, irresponsible,

isolated traveler. He moves without responsibility for his own conduct, has no duty to perform himself and no duty for anybody else to perform.

A majority of the courts, however, have abandoned the solution proposed in *Thorogood* v. *Bryan,* that is, to charge the passenger up with the negligence of the driver of the vehicle, and have undertaken to assert the independent responsibility of the guest or gratuitous passenger. If it is a common carrier of which the injured person is a passenger, the passenger, as to claims against a third person, is treated just as if he were a piece of freight in so far as any duty in the management of the common carrier vehicle is concerned. But when it comes to a guest, his independent responsibility is now recognized. It is not a question of imputation. It is not a question of the passenger's responsibility for what the driver does in turning his wheel in the wrong direction or in taking one side of the road instead of the other side. The passenger is simply treated as a person of ordinary intelligence solicitous for his own safety. When he takes his seat in a car as an invited guest he is not supposed to close his ears and eyes. He must look out for himself.

The contributory negligence on the part of one riding in an automobile driven by another whose negligence was not imputable to the former has been held to be shown as a matter of law in numerous cases: *Martin* v. *Pa. R. R. Co.,* 108 Atl. (Pa.); 631; *Coby* v. *Q. O. & K. C. R. R. Co.* (Mo.), 161 S. W. 290; *Lawrence* v. *D. & A. G. R. R. Co.* (Utah), 174 Pac. 817; *Blanchard* v. *M. C. R. R. Co.* (Me), 100 Atl. 666; *La Goy* v. *Director General* (N. Y.), 131 N. E. 886; *Sadler* v. *N. P. R. R. Co.* (Wash.), 203 Pac. 10; *Hoyle* v. *N. P. R. R. Co.* (Wash.), 178 Pac. 910; *Morris* v. *C. B. & Q. R. R. Co.* (Neb.), 163 N. W. 799; *M. K. & T. R. R. Co.* v. *Bussey* (Kan.), 71 Pac. 261; *So. R. R. Co.* v. *Jones* (Va.), 88 S. E. 178; *Brickell* v. *N. Y. C. & H. R. R. Co.* (N. Y.), 24 N. E. 449; *Miller* v. *L. N. A. & C. R. R. Co.* (Ind.), 27 N. E. 339. Here the plaintiff Miller was a woman and the driver was her husband.

The same is true of *Fogg* v. *N. Y. N. H. & H. R. R. Co.* (Mass.), 111 N. E. 960. See, also, on the general proposition: *Bush* v. *N. P. R. R. Co.,* 64 Pac. 624, 62 Kan. 709; *Kirby* v. *K. C., etc., R. R.* (Mass.), 186 Pac. 744; *Pigeon* v. *Mass., etc., Street. Ry. Co.* (Mass.), 119 N. E. 762; *Leapard* v. *K. C. R. R. Co.* (Mo.), 214 S. W. 268; *Carden* v. *Chicago R. R. Co.,* 210 Ill. App. 155; *Dummer* v. *Milwaukee, etc., R. R. Co.* (Wis.), 84 N. W. 853; *Miller* v. *St. L., etc., R. R. Co.* (Ark.), 206 S. W. 329; *Brommer* v. *Pa. R. R. Co.,* 179 Fed. 577, 29 L. R. A. (N. E.) 924; *C., T., St. L. C. R. R. Co.* v. *Howard* (Ind.), 8 L. R. A. 593.

The instructions were grossly misleading and confused the issues. In instruction No. 3 for the plaintiff the court told the jury that the plaintiff had the right under the law to reply upon her husband to manage and control the automobile and that she was not required by the law to stop before going upon the railroad track. In instruction No. 11 for the defendant the court told the jury the plaintiff did not have the right to rely upon her husband entirely and that if by looking and listening she could not reasonably assure herself that a train was approaching, it was her duty to stop the car or endeavor to have it stopped. These two instructions are in direct conflict. In instruction No. 10 for the defendant the court assumes that the plaintiff had some duty with respect to the movement of the automobile but this instruction is destroyed by that part of instruction No. 3 for the plaintiff which told the jury that the plaintiff had the right to rely upon her husband to manage and control the car. The court refused instructions asked by the defendant which were drawn upon the assumption that the plaintiff situated as she was on the front seat with full opportunity to see, owed to herself and family some duty.

Under the decisions of this court especially in the *Williams* and *Atkinson cases, supra,* this plaintiff was guilty of gross contributory negligence and the court should have so instructed the jury. The *McLeod* and

*Davis cases, supra,* commit our court to the well-established rule in other states that a person seated in a car with opportunity to observe and with knowledge of the surroundings owes the same duty to himself, upon approaching a railroad crossing, as he would owe to himself if he were driving the car. In the McLeod case this court said that ordinary and natural prudence requires such persons to take some action and if necessary to check or remonstrate with the driver. The court said that in the case of *Railroad Co.* v. *Davis,* 69 Miss. 444, 13 So. 693, the principle is recognized and that the appellee in this case saved her claim by proof that she tried to stop the driver. In support of the rule the court cites *Dean* v. *Railroad Co.,* 129 Pa. 514, 6 L. R. A. 143 wherein the point is covered as follows: "Dean knew the locality well; he had crossed the tracks frequently at this point; he knew that a train was due about that time, and that he was approaching the railroad track at a fast trot; yet he took no precautions. He was certainly responsible for his own negligence; he sat with his back to the driver, and, although he might have seen his danger, he confesses that he did not look. He said nothing by way of warning to Fields, nor did he ask him to stop, to look and listen, or to permit him (Dean) to get out; and the danger was as obvious to Dean as it was to Fields." The rule thus indicated by the Pennsylvania court is supported by the numerous authorities, *supra.*

Instruction No. 6, given for the plaintiff has been condemned in several recent decisions. It contains the element that condemned similar instructions in *Davis* v. *Temple,* 91 So. 689; *Davis* v. *Elzey,* 126 Miss. 789, 88 So. 630; *Hines* v. *McCullers,* 121 Miss. 677; 83 So. 734; *Railroad* v. *Daniell,* 108 Miss. 369, 66 So. 730; *Railroad* v. *Gray,* 118 Miss. 612, 79 So. 812; *Railway Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674.

The use of the presumption statute as applied to crossing accidents has been condemned, as above shown, in nearly all the recent decisions. Lawyers and trial

judges appear to have misconstructed the holding in the Thornhill case. However, the rules formulated in that opinion when properly understood, serve as a guide. The use of the statute as allowed by the recent decisions, gives recognition to the original purpose, that is, to make the railroad company produce the facts in its possession. What the court now says is that after the defendant has produced the facts or the facts have been produced by the plaintiff then the case should be decided on the facts. In the Thornhill case the court said that even where both sides have produced all the evidence in their possession the jury may be told about the presumption. But this does not mean that the jury may be told that if there is uncertainty in the facts and the thing has not been made clear to them "the presumption controls." As this court has taken occasion to point out more than once, the statute was not intended to furnish an easy method for the use of the jury in arriving at a verdict; was not intended to create a presumption that would supplant the facts. The presumption can never control except where there is no evidence from which the jury might decide the case.

This accident happened in broad open daylight. The plaintiff and her husband were both on the stand. The railroad company put on the stand all the witnesses that could possibly know anything about it. The most striking, uncertain and unexplained thing about it all is as to how Brown and his wife happened to drive upon the track immediately in front of a locomotive which was at the time within a few feet of them in plain open view. But the jury was authorized by instruction No. 6 to forget about the facts if they were not altogether clear and if they did not, even though clear, exonerate the company from blame. In such state of case the jury was told that "the presumption controls."

Such a vice in an instruction furnishes the counsel for plaintiff in a closing argument a weapon with which the contest can be handled with certainty and dispatch. "The thing is not clear; you do not know how it hap-

pened; you need not bother about how it happened; the court tells you that if it is not clear the presumption controls; you do not have to decide who is swearing falsely and who has told the truth; you may relieve yourself from the burden of consideration and use the controlling presumption." And then the instruction of the court is read to the jury to support the argument: ". . . , and this statutory presumption cannot be overthrown by conjecture; the circumstances of the accident must be clearly shown and the facts so proven must exonerate the company from blame; otherwise the railroad company is not relieved from liability, and the presumption controls, and in such case you should find for the plaintiff." When this is done the result is inevitable. The jury has the word of the trial judge for it that the presumption controls and this means that the case may be decided upon the thing that controls.

*J. W. Cassedy* and *D. M. Anderson,* for appellee.

For the appellee it was shown in the testimony by many witnesses that the view of the railroad track to a person riding in a Ford automobile would be entirely hid to such an extent that an approaching train could not be seen until they had arrived practically upon the track.

In response to motion of appellant the court caused the jury to be carried to the crossing and the record shows investigation was made by the jury in person and that witnesses were examined on the ground, pointing out the different objects which were claimed to be obstructions to the view.

The testimony for the appellee showed that at that time it was raining and foggy, and that the effect of the rain and fog was such as to obstruct the view without regard to any other physical obstructions whatsoever. All the witnesses for both sides testified that it was raining. The engineer testified for the appellant that

138 Miss.—4.

the effect of the rain and the weather conditions was such that his view of the track was considerably obstructed. The head brakeman of the appellant who was sitting in the fireman's seat and undertaking to look out from that side of the engine, this being on the side of the engine from which appellee was approaching in the automobile said that his view was entirely obstructed and that for more than three quarters of a mile he was unable to see outside of the glass at all.

Mr. Brown, the husband of appellee and the driver of the automobile and the appellee, herself, both testified the weather conditions were such in addition to the many obstructions that their view of the railroad track in the direction in which the train was coming, was practically obliterated.

Taking all the evidence both for the appellee and the appellant, it will be seen that there is actually no dispute as to whether or not on this particular day at this particular time and under this particular weather condition, the view of the railroad track in the direction from which the train came, of a person traveling in a Ford automobile from the bridge toward the railroad track was practically obliterated on that side of the railroad.

It was shown that at the moment of the collision the bell was not rung nor was the whistle sounded, and appellee also testified that she heard no bell or whistle.

Instruction No. 6 was presented to the trial judge on the part of the plaintiff together with the following instruction which was requested on the part of appellant: "The court instructs the jury that while under the law proof of injury by the running of a train is *prima-facie* evidence of negligence in the operation of such train, yet if all the facts and circumstances of the jury and the running of the train are in evidence then the presumption of negligence disappears and it is your sworn duty to disregard this presumption of negligence and to arrive at your verdict solely from a consideration of all the

facts and circumstances in the case, unaided in any way by such presumption."

In addition to the above instruction appellant, also, secured instruction No. 1, as follows: "The court instructs the jury that the burden is upon the plaintiff to prove by a preponderance of the evidence each and every material allegation of the declaration."

Appellant, also, secured instruction No. 7, as follows: "The court instructs the jury for the defendant that it is the duty of the plaintiff to prove by a preponderance of the testimony that the whistle or bell signals were not given and that the failure to give such signals was the proximate cause of the accident, and unless such facts are proven by a preponderance of the evidence it is your sworn duty to find for the defendant."

In the case of *Godfrey* v. *Meridian Light & Ry. Co.*, 101 Miss. 565, 58 So. 534, it was held "where the instruction incorrectly states an abstract proposition of law and the same or a similar proposition is thereafter correctly set forth in other instructions, the verdict will not be disturbed where the court taking the instructions on both sides as a whole is satisfied that no harm has been done to either side." And again, in the case of *Miss. Central R. R. Co.* v. *Lott*, 118 Miss. 816, 80 So. 277, this court announced the rule that: "An instruction in the language used therein must be read in connection with all the instructions given in the case." And, also, in the case of *St. L. S. F. R. R. Co.* v. *Ault*, 101 Miss. 341, 58 So. 102, this court said: "A hyper-critical construction shall not be placed upon instructions given or refused, common sense being the best criterion." And in the case of *Moseley* v. *State*, 11 So. 105, it was held that an erroneous instruction granted for the state "is cured by instructions given for the defendant which cover fully the rights of the accused growing out of the law touching self-defense. In *Skeen* v. *State*, 60 So. 495, an erroneous instruction as to the degree of proof necessary to support a conviction was held to be cured by other instructions

in which the law as to reasonable doubt was correctly laid down. In *Riley* v. *State*, 18 So. 117, it was held that a misleading instruction as to reasonable doubt will be rendered harmless by other instructions which announce fully the law on the subject above mentioned. In *Barr* v. *State*, 21 So. 131, it is said that an instruction which fails to fully announce the law is not fatally erroneous if the phase indicated is afterwards satisfactorily enunciated by instructions given at the request of the defendant. In *Cook* v. *State*, 28 So. 833, it was held that erroneous instructions for the state is not requiring the jury as a prerequisite to conviction to believe beyond a reasonable doubt certain facts will be cured by instructions given at the request of the defendant which declare such a degree of proof to be necessary. And again, in the case of *Harper* v. *State*, 83 Miss. 402, it was held that where a conflict between the instructions given for the respective parties results from an erroneous announcement of an abstract proposition of law on the one hand and a correct statement of such or a similar proposition on the other, the error will not be reversible if taking the charge as a whole the appellate court can see that no harm was done. In addition to the above, many other cases could be cited to the same effect. Taking the three instructions above quoted in full together it will be seen that the trial court told the jury that the burden of proof was on the plaintiff to make out her case by a preponderance of the evidence and that she was required to substantiate every material fact charged in her declaration by such evidence. It will, also, be seen that the appellant in his instructions with reference to the *prima-facie* statute, also, requests the court to state to the jury that proof of the injury by the running of the train is *prima-facie* evidence of negligence in the operation of said train. Appellant, also, had the benefit of instruction No. 7 for the appellant.

If these three instructions are taken together, then the jury was told in unmistakable terms, if all the facts and circumstances of the injury and the running of the train

were in evidence that the plaintiff was not entitled to the benefit of any presumption of any kind or character whatsoever. They were then told that under such circumstances they were to arrive at their verdict solely from a consideration of all of the facts and circumstances in the case, unaided in any way by such presumption. The jury in the case was presumed to be composed of men of intelligence and to be competent to understand the English language as written, and they are presumed to have obeyed the instructions given them by the court.

We, therefore, submit to the court that there is no merit in appellant's contention that the *prima-facie* instruction should not have been granted to the appellee. This case differs from the case of *Davis* v. *Temple,* 91 So. 689, and *Davis* v. *Elzey,* 126 Miss. 789, and *Hinds* v. *McCullers,* 121 Miss. 677; *Railroad Company* v. *Daniell,* 108 Miss. 358; *Railroad Company* v. *Gray,* 118 Miss. 612; *Railway* v. *Thornhill,* 106 Miss. 387, for the reason that in the above cases the injuries were not instructed by the court as the jury was in the present case, that the *prima-facie* statute instruction granted in this case was in no case to apply where the evidence as to how the accident occurred was before the jury. In the case of *Davis* v. *Elzey, supra,* this court held in a similar case that the giving of a *prima-facie* instruction was not reversible error "because the evidence of the defendants showed it was negligent under sections 3546 and 3547, Code of 1892." We, therefore, submit to the court under the above authority in no event could the granting of this *prima-facie* instruction be reversible error since the testimony of appellant shows it was guilty of negligence.

It is contended that it was error to allow the jury to say that the defendant was negligent as to keeping a proper lookout. It was admitted by the appellant that its employees were fully familiar with the fact that they were approaching a highway crossing on which they knew travelers would likely be. Under these circumstances the fireman admitted that he was putting in coal

and could not possibly keep a lookout. The brakeman admitted that because of the rain and for more than three-quarters of a mile and continuously until the collision occurred, he was unable to see at all. The engineer testified that he was fixing the storm window and that he was unable to see on account of the storm, and that the speed of the train was not slackened nor were any extra signals given, but to the contrary the train was continued to be run absolutely in disregard of the fact that it was approaching this crossing where people's lives and limbs would be in danger. Section 216, pp. 988, 989, R. C. L., in dealing with the duty of employees in charge of engines to keep a lookout under circumstances similar to those in the case now before this court, states the rule as follows: "The duty of the company is usually expressed by the terms ordinary and reasonable care." It states ordinary and reasonable care must, however, be determined in the light of all the surrounding facts and circumstances so that the care required to prevent the infliction of injury is always proportionate to the danger and chance of injury.

It was perfectly proper for the trial judge to announce by the instruction granted to the plaintiff that it was the duty of appellant's employees to keep and maintain a reasonable lookout. We direct the court's attention to the notes reported in 20 A. L. R. 1064-1079, where the court will find a very large number of cases dealing with the question of the liability of railroad companies for injuries caused by the running of the trains at a time when the state of the weather prevented those in charge of the trains from being able to see or keep a proper lookout.

Appellant filed the plea of the general issue. There was no notice given under the general issue and no special plea setting up contributory negligence as a bar or otherwise to the cause of action presented by appellee's declaration. It has been held by this court for many years and in many cases that contributory negligence is

an affirmative defense and if a defendant in an action of tort for damages on account of personal injuries received desires to take advantage of the contributory negligence, if any, of the person injured and suing, that this defense must be pled, and in addition to this either from the evidence of the plaintiff or the defendant this defense must be proven. *Fuller* v. *I. C. R. R. Co.,* 56 So. 785; *Mayor, etc., of Vicksburg* v. *McLean,* 6 So. 774; *Miss. Cen. R. R. Co.* v. *Hardy,* 41 So. 506; *McMurdy* v. *Railroad Co.,* 67 Miss. 601; *Sims v. Forbes,* 86 Miss. 412; *M. & O. R. R. Co.* v. *Campbell,* 114 Miss. 803; *Kress & Co.* v. *Markline,* 117 Miss. 37; *Birmingham Railway Light & Power Co.* v. *Fox,* 56 So. 1013, 174 Ala. 657; *L. & N. R. R. Co.* v. *Moran,* 66 So. 799, 190 Ala. 108; *I. C. R. R. Co.* v. *Redmond,* 81 So. 117; *M. & O. R. R. Co.* v. *Campbell,* 75 So. 554, wherein Judge Stevens, at page 560, states: "The defense of contributory negligence is always an affirmative defense and the burden as to it is upon the defendant." This is the rule in Mississippi and the rule enforced in the Federal courts.

All the contentions of appellant founded on the idea of contributory negligence have been or ought to be disposed of on the grounds above stated; that is, there was no plea of contributory negligence filed by appellant in the court below.

The court will note from the instructions that appellee in no wise was relieved of any negligence whatsoever insofar as she is individually concerned, the instruction only stating that under the circumstances named his negligence was not to be imputed to her. She could not stop; she was not driving the automobile; she had no control of the car nor was her husband acting as her agent and servant in that regard. For the appellant the court granted instruction No. 9, and in this instruction the rule was announced as to what she was required to do individually and in person in order to be free from contributory negligence, and there is not a line in instruc-

tion No. 9 which in any way conflicts with the instruction granted appellee.

Again, in instruction No. 11, the court told the jury for the appellant as follows: ''One who sits on the front seat of an automobile with the driver has no right to rely upon the driver entirely even if the driver be her husband when approaching or about to cross a place as dangerous as a railroad crossing. On the other hand you are instructed that it is the duty of such person to look and listen for the approaching train and if looking and listening will not reasonably assure such person that no train is approaching it is the duty of such person to stop or to endeavor to have the vehicle stopped and if without remonstrating with the driver or without looking or listening or stopping or endeavoring to stop the car, if necessary, the car is driven upon the track and struck by a train, then such person so sitting by the driver is guilty of negligence.''

The court will note this instruction deals with the duty of the appellee and gives the appellant the benefit of every rule of law for which it contends in its brief. It in no wise conflicts with the instruction for the appellee.

In Huddy on Automobiles (6 Ed. 1922), sec. 685, p. 896, Mr. Huddy announces the rule to be: ''It is clear that the mere relation of husband and wife does not charge the wife with the negligence of the husband in running a motor vehicle though she is at the time of the accident riding in the automobile. Some fact other than the relationship must be shown in order that the negligence of one shall be imputed to the other. In case the wife is exercising control over the movements of the vehicle, or if the husband could be said to be the servant or agent of the wife, or, if they were engaged in a common purpose or joint enterprise, then there is ground for the doctrine of imputed negligence, but the additional circumstance that the wife is the real owner of the machine driven by her husband does not impute his negligence to her. The fact that they are moving to another city does

not make them engaged in a joint enterprise.'' See, also, 22 R. C. L., sec. 281, p. 1047 and sec. 283, p. 1049; *Carnegie* v. *Great Southern R. R. Co.*, 128 Minn. 14, 150 N. W. 164; *Chicago R. L. & P. R. R. Co.* v. *Johnson*, 224 S. W. 277; *Terwilliger* v. *Long Island R. R. Co.*, 152 App. Div. 169, 136 N. Y. Sup. 733, 209 N. Y. 522; *Howe* v. *Minneapolis, St. P. & S. M. R. R. Co.*, 62 Minn. 71, 30 L. R. A. 684; *Mittelsdorfer* v. *West Jersey & S. R. R. Co.*, 77 N. J. 698, 73 Atl. 538; *Lammers* v. *Great Northern R. R. Co.*, 82 Minn. 124; *Central of Ga. R. R. Co.* v. *Jones*, 195 Ala. 378, 70 So. 729; *Glanville* v. *Chicago R. I. & P. R. R. Co.* (Iowa), 180 N. W. 152; *Wachsmith* v. *B. & O. R. R. Co.*, 233 Penn. 456, 82 Atl. 755; *Andell* v. *C. R. I. & P. R. R. Co.*, 97 Kan. 688; *Beck* v. *Director General*, 268 Penn. 571; *T. & O. C. R. R. Co.* v. *Fippin*, 86 Ohio 334, 99 N. E. 1134; *Hines v. Johnson*, 264 Fed. 465; *Carpenter* v. *Atchison, T. & S. F. R. R. Co.* (Cal.), 195 Pac. 1073.

In addition to the above cases many more could be cited along the same line. On the facts in this case it is admitted that Mr. Brown, the appellee's husband, was a competent, careful driver of his automobile, and that he had at all times prior to the date of the accident always carefully looked and ascertained that there were no trains upon the track before he undertook to cross over. Under the circumstances in evidence there was every indication to the mind of the appellee, the wife of Mr. Brown, that he was taking every precaution necessary to ascertain that the way over the track was safe. If it is true as announced in the authorities above cited that his negligence should not be imputed to her under the circumstances in this case, and if it is true as stated in the same authorities that she is to be measured by the rule of ordinary care; that is, that she must take such care and precaution as an ordinarily prudent person would and should take for her own safety situated as she was at the time, then we respectfully submit to the court that there was no act of her husband, Mr. Brown,

either in his prior experience as a driver of an automobile or in his present conduct in the handling of the automobile that would have conveyed to the mind of any ordinarily prudent person that he was not taking all reasonable precautions necessary for the safety of himself, his wife and their children.

We submit that the instructions were not misleading, neither did they confuse the issues, but that to the contrary appellant was granted by the instructions a much more liberal rule than it was entitled to receive. In fact, every case we have cited above would have entitled the appellee to a much stronger statement of the law as a contributory negligence and her right to rely upon her husband, the driver of the car, than was granted to her by the trial court, and under these authorities appellant was not entitled to have the jury told peremptorily that it was her absolute duty to look and listen for an approaching train, and yet this was granted to the appellant in instruction No. 11. Not only was he granted this, but the court told the jury for the appellant that if looking and listening would not reasonably assure her that no train is approaching, it then became her duty to stop or to endeavor to have the automobile stopped, and they were, also, told that if she failed to remonstrate with the driver and without looking or listening or stopping or endeavoring to stop the car, it was driven upon the track under these circumstances, that she was guilty of contributory negligence, whereas under the law all of these facts should have been submitted to the jury as questions of fact.

Argued orally for appellant by *J. N. Flowers,* and *J. T. Brown,* and for appellee by *J. W. Cassidy.*

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff in the court below and sued the appellant for a personal injury occasioned by a colli-

sion between a freight train of the appellant and an automobile belonging to and driven by the husband of the appellee in which she, her husband, and children were riding. The collision occurred at a crossing just south of the town of Doolittle in Newton county, Miss.

The husband of the plaintiff, who at the time of the injury lived in the town of Newton, Miss., had business calling him to Decatur, Miss., on the day in question, which was also the day for holding the Democratic primary election in 1923. Mr. Brown asked the appellee to accompany him on the trip and to carry the children. Just prior to reaching the railroad crossing, a rain came up accompanied by wind, and at the time of the collision the wind was blowing and the rain was falling. Just prior to reaching the crossing where the collision occurred, the plaintiff and her husband in their car met another car which had just come across the railroad track and had stopped to put up the curtains to the car. The husband of the plaintiff testified that he looked in each direction as he approached the railroad crossing and failed to see the approaching train. He testified as to the existence of some obstructions between the public road and the railroad track as he approached the crossing, but was unable to say why he was unable to see the train before he reached the track. The automobile in which the plaintiff and her family were riding was struck by the pilot of the engine of the train and was carried some distance below the crossing. The plaintiff was injured by having one leg broken between the knee and hip, and the other leg was broken just above the ankle, and one of the pelvic bones was fractured and her body greatly bruised and injured. One of her children was killed in the collision and another child injured. The plaintiff was taken to a hospital and remained there for three months, and at the time of the trial she was still suffering from her injuries. One of plaintiff's legs was about an inch shorter than the other because of the injury,

and there also developed a difference in the size of the leg. There was also permanent injury to the hips.

Plaintiff's witnesses, of whom there were a number, testified that the train failed to blow its whistle or ring the bell on approaching the crossing. A number of persons' attention was attracted to the train, some of whom are positive that the whistle did not blow and that the bell was not ringing on approaching the crossing. Others testified that they were in position to hear and did not hear the whistle blow or the bell ringing.

The crew on the train testified for the defendant that they did blow the whistle at the whistling board one thousand seventy feet north of the crossing, and that the bell was set to ringing automatically within a few feet of the whistling board, and that it was kept ringing until the crossing was passed. The engineer of the train testified that he set the bell to ringing not exceeding one hundred feet from the whistling board, and that he turned off the automatic ringer just before he reached the crossing, but that the momentum of the bell kept it ringing until the engine had crossed the crossing. The automobile in which the plaintiff and her husband and children were riding approached the crossing from the east traveling in a northwesterly direction, while the railroad track ran north and south and the train was approaching from the north. The engineer was on the west side of the locomotive, and the head brakeman was on the east side thereof, and the fireman was shoveling coal into the fire box of the engine while the train was approaching the crossing, and consequently the fireman was not keeping a lookout. The head brakeman was sitting in the engine cab using a piece of waste to wipe off the glass, and was trying to see out, but was unable to see anything on his side owing to the fact that the steam from the engine on the inside and the rain on the outside kept the glass blurred so they could not see through it. The wind and rain came from the southeast. The train approached the crossing, according to the railroad employees, at about

twenty-five miles an hour, and according to other witnesses at about thirty to thirty-five miles an hour. According to the employees of the railroad company in charge of the train, it was necessary to keep the speed up in order to go up a grade beyond and to the south of the crossing, the crossing being on a downgrade of the track, but some distance beyond there was a rise, and it was customary to approach this rise with considerable speed.

The plaintiff's husband testified that he looked to the north and to the south as he approached the crossing; that he was traveling in low gear.

At the time of the collision the plaintiff was looking back at the children on the rear seat of the automobile. It seems that the isinglass in the back of the automobile was broken out and the rain was blowing in, and two of the children were trying to hold a rain coat over the opening caused by the broken isinglass in order to protect themselves from the wind and rain.

The plaintiff on the stand was asked the following questions and answered as follows with reference to what she was doing at the time of the collision:

"Q. Do you recall what the children were doing just before you got to the crossing there where this accident occurred? A. Well, the little boy who was killed and the little Strait boy were standing up there holding the little boy's rain coat over the back of the car. They were standing on their knees.

"Q. You were paying attention to the children? A. Yes, sir; and was after them to sit down.

"Q. And that is what you were doing about the time this accident occurred? A. Yes, sir.

"Q. Mrs. Brown, what, when you were coming up to this crossing, I will ask you to state whether or not you saw or knew that there was a train coming? A. I did not.

"Q. Do you recall what you were doing at that time? A. I don't know whether I do clearly or not. But I was turned this way, in this position, which would have made

it kind of away from the train, looking at the children, as I remember.

"Q. Doing something with the children? A. Yes, sir.

"Q. Now, what was the first notice or knowledge that you had that this accident was about to occur? A. Mr. Brown said, 'Oh, there is the train right on us.'

"Q. Then it struck? A. It struck before I had time to look.

"Q. From then on until you—well what happened to you then? A. I don't know. . . .

"Q. And as you came on up the road towards Decatur, where did the hard rain catch you? A. The hard rain was while we were under the station. ·

"Q. Well, it was not raining much then as you approached the crossing? A. I could not say.

"Q. How many times do you suppose you ever crossed over this crossing? A. I could not say; I don't have any idea.

"Q. A great many times, have you not? A. Well, I have passed over it a good many times. . . .

"Q. It was raining though as you approached the crossing? A. I think it was raining. Whether it was raining hard I don't know; I can't say. But I am sure it was raining.`

"Q. Now, in your declaration you say that a few moments before you got to the crossing that your husband looked up the railroad, or looked to see about the train, I believe. Did you say that? A. I am pretty sure that I did.

"Q. And did he look to the north or the south? A. My recollection is that he turned toward me, which would have been north.

"Q. And you thought at the time that he was looking to see if there was a train coming? You remember that he looked for a train as you approached the crossing? A. I am not clear on that.

"Q. But that is your best recollection? A. That is my best recollection. . . .

"Q. And you remember that it was your best recollection about it as you approached the crossing your husband looked to the north a few moments before he went over? A. That is my best recollection.

"Q. But you, as you approached the crossing, you didn't look yourself? A. I don't have any recollection of looking.

"Q. You didn't listen? A. No, because I was looking after the children.

"Q. And you didn't stop? A. No, I didn't stop, no more than just the car paused to go in low gear.

"Q. But just to pause to go in low gear is all that you stopped? A. Yes, sir.

"Q. That is true, Mrs. Brown; as far as you are concerned you took no precaution whatsoever yourself? A. Well, no; I didn't. Not that I remember of. I usually do, but I don't remember that day.

"Q. Were the boys making any noise? A. Well, they were laughing some.

"Q. Was there a window in the back end of the car? A. Yes, sir.

"Q. Isinglass? A. Yes, sir. It was broken.

"Q. And the little boys were holding something up over that? A. Well, the boys were putting up the rain coat. The little boy that was killed and the other little boy.

"Q. The wind was coming from your back? A. I judge that it was.

"Q. Did your husband have the wind-shield open or closed? A. I don't know.

"Q. Were the curtains up? A. They were, except that my curtain was unfastened at the top and dropped, and the isinglass was broken out of it.

"Q. Well, on your side, you were on the right-hand side? A. I was.

"Q. And on your side the curtain was really not up? A. Well, it was practically up.

"Q. I mean in so far as obstructing the view? A. Well, I don't think it was.

"Q. You could not see out north on your side? A. Yes, sir.

"Q. And your husband could see through that same opening, couldn't he? A. I think so.

"Q. And the way you were going you were rather facing the way the train was coming from? A. I was turned; I was not facing the way the train was coming.

"Q. I don't mean you were yourself, because as I understand it you were turned partly around looking back the other way; but I mean the car— A. Yes, sir.

"Q. Your best recollection about it is that, while you did nothing yourself, you remember that your husband looked once before you went up? A. I think I remember that.

"Q. How far do you think it was from the track when he looked up? A. Well, I just don't know. I don't know how to measure distance.

"Q. Well, would you say it was before he went into low gear? A. No, it was about the time that he did go into low gear.

"Q. About the time he went into low gear to go up the ascent? A. Yes, sir.

"Q. And as far as you know, and as indicated in your declaration, he didn't look any more, as far as you know? A. No, sir; until he looked and saw the train.

"Q. Did you ever see the train before it struck? A. No, sir."

The testimony was conflicting as to whether there were obstructions between the public road, and the railroad in the direction from which the train was approaching. The jury were taken to the scene of the accident and the situation was pointed out to them, and they had the benefit of a view of the *locus in quo.*

Among the instructions procured by the plaintiff were:

"Instruction No. 3.  The court instructs the jury for the plaintiff that if you believe the plaintiff had no control of the automobile in which she was riding or of the driving of her husband who was operating same, and that he was not acting as her agent or servant, and she was only riding with him as his guest, as his wife and companion, she had a right under the law to rely upon her husband to manage and control the automobile, and she was not required by law to stop before going upon the railroad track, and in this case, even though you believe he was guilty of negligence in failing to see the train, or that he was guilty of negligence in failing to stop and look and listen, his negligence, if any, under the above circumstances, should not by you be imputed to her.  And if you also believe the railroad company, through its servants in charge of the engine, were guilty of negligence in failing to keep a reasonable lookout and give the signals required by law, and heretofore set forth in these instructions, before crossing over the highway, and this negligence, if any, approximately contributed, even in the slightest degree, to the cause of the plaintiff's injury, then your verdict, should be for the plaintiff for such amount as warranted by the evidence, and you may believe, from the evidence, she is entitled to receive 'to compensate her, not to exceed the amount sued for in her declaration."

"Instruction No. 5.  The court instructs the jury for the plaintiff that under the law contributory negligence on the part of a person injured, or the contributory negligence of any other person for whom she may be responsible, is no longer a bar to the right of recovery for injuries negligently caused by another, and in this case if you believe from the evidence that the servants of the railroad company failed to give the signals as required by law and set forth in the instructions of the court, and failed to keep a proper and reasonable lookout on approaching the crossing, and if you believe the failure so to do proximately contributed to the cause of her in-

jury, then your verdict should be for the plaintiff; and this is true however slight the degree of contribution may have been; and this is also true even though you may believe the plaintiff or her husband, or both, were guilty of contributory negligence in failing to see the defendant's train, or to stop or look or listen or hear the defendant's train; and this is true however gross you may believe such contributory negligence, if any, to have been.

"Instruction No. 6.  The court instructs the jury for the plaintiff that in all actions against railroad companies using engines, locomotives, and cars propelled by the dangerous agency of steam and running on tracks, for damage done to persons at highway crossings, proof of injury inflicted by the running of the engines and cars of such railroad under the law is *prima-facie* evidence of the want of reasonable skill and care of such railroad corporation in reference to such engines, and in this case, if you believe from the evidence the plaintiff was injured under such circumstances, this makes out a *prima-facie* case of liability, and this statutory presumption cannot be overthrown by conjecture; the circumstances of the accident must be clearly shown and the facts so proven must exonerate the company from blame; otherwise the railroad company is not relieved from liability, and the presumption controls, and in such case you should find for the plaintiff."

For the defendant, among other instructions, No. 9 was given, which reads:

"The court instructs the jury for the defendant that Mrs. Brown did not have the right to rely upon her husband to ascertain whether a train was approaching when she and her husband approached the crossing.  But it is her duty, under the law, to use such precaution as a reasonably prudent person would have used under the circumstances to find out whether a train was approaching.  And unless you believe from a preponderance of the evidence that she, herself, used such precaution,

then it is your sworn duty to find for the defendant, provided you believe that her failure to use such precaution was the sole cause of the accident."

Instruction No. 11 for the defendant reads:

"The court charges the jury for the defendant that one who sits on the front seat of an automobile with the driver has no right to rely upon the driver entirely, even if the driver be her husband, when approaching or about to cross a place as dangerous as a railroad crossing. On the other hand, you are instructed that it is the duty of such person to look and listen for an approaching train. And if looking and listening will not reasonably assure such person that no train is approaching, it is the duty of such person to stop, or to endeavor to have the vehicle stopped. And if, without remonstrating with the driver, or without looking or listening or stopping or endeavoring to stop the car, if necessary, the car is driven upon the track and struck by a train, then such person so sitting by the driver is guilty of negligence."

The defendant also secured an instruction that, if the plaintiff were guilty of contributory negligence, it was the sworn duty of the jury to diminish any damages to which she might be entitled in such amount as the proportion of her negligence bears to the negligence of the defendant, if any.

Under the evidence in this case, numerous witnesses were introduced by both parties and the facts appear to be disclosed by the evidence. The entire crew of the train testified as to its operation and movement, and numerous witnesses who saw the train as it approached, and some of whom witnessed the accident, testified as to how the train was operated and how the injury occurred.

In our opinion it was improper to invoke the *prima-facie* statute as was done in instruction No. 6 for the plaintiff set out above. It has often been held by this court that where the facts are in evidence, the jury must determine the negligence or lack of negligence from the evidence and not from the statute. It was especially im-

proper and harmful for the court to instruct the jury that the facts so proven must exonerate the railroad company from blame, otherwise the railroad company is not relieved from liability and the presumption controls.

It is not true that the law requires the facts to exonerate the railroad company from blame. The law requires the facts to be produced, and if the facts are not produced in evidence, the presumption prevails; but when the facts are produced the jury must decide the question from the facts, and unless the facts show negligence the plaintiff does not prevail. If there is a conflict in the facts as testified by the different witnesses, the jury must pass upon the conflict and must determine what the facts are from the evidence. They must decide the question of the veracity of the witnesses so presented. Frequently where the facts are in evidence two or more different reasonable conclusions might be drawn by the jury. In such case it is the duty and province of the jury to apply their minds to the question and to decide which is the more reasonable and probable inference to be drawn from the facts so proven, and they cannot escape this duty of applying their minds to the proposition by adopting the statute as a substitute. The instruction here involved authorized the jury in such case to adopt the presumption of liability. In other words, if all the facts are in evidence and different reasonable conclusions could be drawn therefrom, one favorable to the railroad company and another favorable to the plaintiff, the instruction makes it the duty of the jury to adopt that unfavorable to the railroad company. The statute was intended to have operation only when the facts were not or could not be produced and places the burden upon the company to produce the facts which are generally peculiarly within its own knowledge.

This instruction has been condemned in the following cases: *A. & V. Ry. Co. v. Thornhill,* 106 Miss. 387, 63 So. 674; *A. G. S. Ry. v. Daniell,* 108 Miss. 358, 66 So. 730; *I. C. R. R. v. Gray,* 118 Miss. 612, 79 So. 812; *Hines*

*v. McCullers,* 121 Miss. 666, 83 So. 734; *Davis v. Elzey,* 126 Miss. 789, 88 So. 630, 89 So. 666; *Davis v. Temple,* 129 Miss. 6, 91 So. 689.

Instruction No. 3 for the plaintiff above set out does not correctly announce the law. The wife as the guest of her husband, or any other person as the guest of the driver of an automobile or other vehicle, may not absolutely rely upon such driver. Such passenger must exercise reasonable care according to the circumstances surrounding them at the time for their own safety. The law in reference to the duty of a person under such circumstances has already been stated in the authorities in this state, and this instruction on another trial ought to be properly modified to conform to the pronouncement of this court if it is to be given in any form.

There are other assignments of error, but as the case must go back for a new trial we do not deem it necessary to discuss them now.

Some of the instructions asked by each side ought to be carefully scrutinized and redrafted if intended to be used on another trial. It would serve no useful purpose to comment at length upon them now, as the court on a new trial must pass upon the questions that will then be asked, and we do not know whether the next trial will be exactly on the same evidence or whether the same instructions will be requested.

For the errors indicated, the judgment must be reversed and the case remanded.

*Reversed and remanded.*