COLUMBUS & G. RY. CO. v. DUNLAP.

(Division B. Jan. 30, 1933.)

[145 So. 646. No. 30319.]

Gardner, **Odom & Gardner**, of Greenwood, for appellant.

Osborn & Witty, of Greenwood, for appellee.

Anderson, J., delivered the opinion of the court.

Appellee brought this action in the court of a justice of the peace of Montgomery county. against appellant to recover the damages in the sum of one hundred twenty-five dollars for the loss of a Jersey cow, alleged to have been killed by the negligent operation of one of appellant's locomotives. Appellee recovered a judgment in the sum of sixty-two dollars and fifty cents in the justice of the peace court; from that judgment appellant appealed to the circuit court, where there was a trial resulting in a judgment in the sum of fifty-six dollars

for appellee; from that judgment appellant prosecutes this appeal.

The appellee was given two instructions applying the prima facie statute to the case, section 1580, Code 1930, which provides as follows: "In all actions against railroad corporations and all other corporations, companies, partnerships and indiviuals using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, for damages done to persons or property, proof of injury inflicted by the running of engines, locomotives or cars of any such railroad corporations or such other corporation, company, partnership or individual shall be prima-facie evidence of the want of reasonable skill and care of such railroad corporation, or such other corporation, company, partnership or individual in reference to such injury. This section shall also apply to passengers and employees of railroad corporations and of such other corporations, companies, partnerships and individuals."

The giving of those instructions is assigned and argued as error. There was no conflict in the evidence as to whether or not appellee's cow was killed by the running of one of appellant's locomotives. The evidence showed that fact conclusively; in fact, it was admitted by appellant. There was a conflict in the evidence as to the time the cow was killed and by which one of appellant's locomotives. Appellant's evidence was to the effect that she was killed by one of its gasoline motor drawn passenger trains going west about 10:45 a. m. on September 15, 1930; while appellee's evidence tended to show that she was killed on that date about four o'clock in the afternoon by one of appellee's steam drawn passenger trains going west.

The testimony in the case was substantially as follows: Appellee testified that he lived about a quarter of a mile

from the place where the cow was killed. That about four o'clock P. M. on September 15, 1930, one of appellant's passenger trains drawn by a steam engine went west from Winona towards Greenwood. That while the train was passing, when it reached a point about where the cow was killed, he heard the whistle blowing continuously for some fifteen to twenty seconds. That from the noise of the train it appeared that it did not slacken its speed. That he thought from the blowing of the whistle some stock must have been on the track. That about an hour after he heard the train pass he went to the scene and found that his cow had been killed. That she was lying about eight or ten feet north of the track. That he kept his stock under fence but in some way the cow had broken out. That he looked over the scene and found that from the point where the cow lay back eas for a distance of fifty-one yards there were blood stains and hair on the track, and that from where the blood stains began, going back east one hundred and four yards, he observed the cow's tracks between the rails, and that these tracks were fresh and indicated that the cow was running from east to west. That the blood on the track was fresh. That he had had extensive experience in butchering live stock and knew from that experience whether blood was fresh or stale. That one hundred and sixty-one yards east of where the cow's tracks began a switch track began, and from the west end of the switch track for a distance of a half mile east there was a clear view down the track to where the cow's body was found. That the track between these two points was practically straight.

Cooksie, a witness for appellee, testified that on the day the cow was killed he was going along appellant's railroad track, going east toward Winona; that about one-fourth mile from where he later found appellee's cow he met one of appellant's steam drawn passenger trains

going west; that after the train passed he walked on and found the cow lying by the side of the track; that this was about four o'clock in the afternoon of September 15, 1930; that from the point where the cow lay blood stains, hair, and skin showed along the track for about fifty yards, and that where the blood stains stopped the cow's tracks showed between the rails for about one hundred yards east; and that the cow's tracks were fresh, and so was the blood.

Appellee introduced no eyewitnesses to the killing of the cow. Appellant introduced none except one of its engineers, Carson, who testified that on September 15, 1930, he was operating one of appellant's gasoline engine drawn trains which left Winona about 10:45 A. M. going west; that he was the only employee on the train; that he ran into appellee's cow and killed her about one mile west of Winona (there is no conflict as to the place where the cow was killed); that when his train reached a point something like a mile west of Winona, on a sharp curve, the cow suddenly appeared on the track sixty or seventy feet away; that the train was going through a cut at the time the cow came on the track from the left side, up a bank eight or ten feet high; that he applied the brakes and did everything he could to stop the train; that the cow ran down the track until the train overtook her and struck her; that when she was struck the train was running so slowly it pushed her down the track some distance and then ran over her; and that he stopped and went back and helped to drag her from under the train.

The instructions in question are in this language:

"The court instructs the jury for the plaintiff that if the jury believes from a preponderance of the evidence, that the injuries to plaintiff's cow were inflicted, and the death of said cow was caused, by the running of the engine or locomotive of the defendant railway company,

then under the law, this constitutes prima facie evidence of the want of reasonable skill and care on the part of the servants of said railway company, and unless said defendant railway company has shown fully all the facts and the circumstances connected with the injuries to and killing of said cow, and unless said facts and circumstances show that at and immediately before the time when the locomotive or engine of defendant railway company struck said cow, that the servants and employees of said railway company were exercising reasonable skill and care in operating said locomotive or engine, and in seeking to avoid injuring said cow, then the jury should find for the plaintiff, and assess his damages in such sum as the jury may believe from a preponderance of the evidence that plaintiff is entitled to, not to exceed the sum of one hundred and twenty-five dollars.''

''The court instructs the jury that, if the jury believe from a preponderance of the evidence that plaintiff's cow was killed by the running of defendant's locomotive or engine, then it is the duty of the defendant to show clearly the facts and circumstances connected with the killing of the cow; and, if the defendant has failed so to do, then the jury should find for plaintiff.''

The court instructed the jury for appellant that if they believed from the evidence that the cow was killed by appellant's passenger train that left Winona at 10:45 A. M. on September 15, 1930, then they should find a verdict for appellant.

Under the authority of New Orleans & Great Northern R. R. Co. v. Walden, 160 Miss. 102, 133 So. 241, and Adams-Newell Lumber Co. v. Jones, 162 Miss. 517, 139 So. 315, we think it was error for the court to give these instructions invoking the prima facie statute. It is undisputed in this case that appellee's cow was killed by the running of one of appellant's locomotives. The evidence on behalf of appellee was entirely circumstantial—

there were no eyewitnesses. It showed conclusively that the cow was killed by the operation of appellant's train. The evidence on behalf of appellant was direct, it was by an eyewitness, and if believed by the jury exonerated appellant from liability; it showed that the killing was unavoidable. Thus confronted the jury may have reached the point in their consideration of the case where they were unable to agree whether appellee's or appellant's theory was supported by a preponderance of the evidence. There was one indispensable fact, however, about which they could not differ, namely, that the cow was killed by the running of one of appellant's locomotives. As stated, the proof showed that without conflict, and furthermore appellant admitted the fact. The jury then may have reasoned this way, and would have been justified from the evidence in doing so: The court has instructed us that if the cow was killed by appellant's morning train there is no liability. We are not convinced from a preponderance of the evidence whether that is true or not. The fact is without dispute, however, that the cow was killed by one of appellant's trains. We find that the court in two instructions tells us, in effect, that if we cannot reach a decision as to whether the cow was killed by the morning or afternoon train, we have the right to bring to our aid the presumption of the statute. With that presumption we have no trouble in reaching a verdict for appellee.

In Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 138, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463, the Supreme Court upheld the constitutionality of our prima facie statute as construed by this court in Gulf, M. & N. R. R. Co. v. Brown, 138 Miss. 39, 102 So. 855, and Columbus & G. R. R. Co. v. Fondren, 145 Miss. 679, 110 So. 365. In the Turnipseed case the court said that the only legal effect of the presumption of negligence furnished by the statute was

to "cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence;" and that the purpose of the statute was "to supply an inference of liability in the absence of other evidence contradicting such inference."

In Western & A. R. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, the Supreme Court held that the Georgia statute creating a presumption of negligence was violative of due process, because as construed by the Supreme Court of that state it provided that the presumption of negligence was given the effect of evidence to be weighed against opposing evidence, and that the presumption should prevail, unless such opposing evidence was found by the jury to preponderate. In other words, where the evidence on the issue of liability is conflicting the presumption of the statute cannot be appealed to as a deciding witness for the plaintiff. As we view the case at bar, that was the effect obtained by giving the appellee the two instructions complained of.

In the case of Atlantic Coast Line R. R. Co. et al. v. Katherine H. Ford, 53 S. Ct. 249, 77 L. Ed. —, decided on the 9th of January, that court reviewed the Turnipseed case and the Henderson case and reaffirmed this language used in the Turnipseed case: "The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence."

In holding that the presumption of the statute as invoked in this case was error, we do not mean to say that it had no place in the case. It was the manner in which it was invoked that constituted the error. If the preponderance of the evidence showed that the cow was

killed by the afternoon train, appellee was entitled to the presumption of the statute that she was negligently killed, and appellant having introduced no evidence whatever to rebut the presumption, appellee was entitled to a directed verdict on the issue of liability. On the other hand, if the preponderance of the evidence showed that the cow was killed by the morning train, the presumption of the statute had no place in the case because appellant introduced evidence rebutting the presumption.

Assuming, without deciding because the question is not before us, that the court correctly charged the jury to return a verdict for appellant if they believed from a preponderance of the evidence that the cow was killed by the morning train, the court, if requested, should have charged the jury substantially as follows: If you believe from a preponderance of the evidence that the cow was killed by the morning train, you will return a verdict for appellant; on the other hand, if you believe from a preponderance of the evidence that the cow was killed by the afternoon train, you will return a verdict for appellee and assess the damages, etc.

Reversed and remanded.