COLUMBUS & G. RY. CO. *v.* DUEASE *et al.*[*]

(Division B. March 8, 1926. Appellee's Suggestion of Error Overruled March 22, 1926.)

[108 So. 151. No. 25483.]

1. RAILROADS. *Where all facts are not in evidence, prima-facie instruction under statute is proper, but instruction that evidence must exculpate railroad to satisfaction of jury is error (Code 1906, section 1985 [Hemingway's Code, section 1645]).*

   Where an injury results from an automobile being struck by a locomotive of the railroad, and where all the facts are not produced in evidence, it is proper to give the *prima-facie* instruction under section 1985, Code of 1906 (Hemingway's Code, section 1645), but it is error to instruct the jury that the evidence must exculpate the railroad company to the satisfaction of the jury before it will relieve the company from liability.

2. RAILROADS. *Railroad maintaining private crossing for public held under common-law duty to give proper signals when locomotives are approaching.*

   Where a collision between a locomotive and an automobile occurred at a private crossing kept up and maintained by the railroad com-

pany, where such railroad has a depot and platform for the use of those desiring to board or depart from the passenger trains, and where the railroad maintains a switch for the purpose of loading and unloading freight, and where such crossing had been maintained for a long time, and was the only crossing at such place, and is open to the public to travel at will, with the acquiescence and consent of the railroad company, it is the duty of the railroad company at common law to give proper signals when its locomotives are approaching such crossing.

3. RAILROADS. *Charging that, where one uses private crossing maintained for public travel, although only as licensee, railroad owes same duty as it owes one at public crossing held error.*
In the case of a private crossing, as stated in the preceding syllabus, it is error for the court to charge the jury that, where one uses the crossing, although only as a licensee, the company owes him the same duty as it owes one crossing at a public crossing. There is a difference between the duty imposed by statute at public crossings, and the duty imposed at common law with reference to private crossings.

*Corpus Juris-Cyc References:. Railroads, 33 Cyc, p. 964, n. 80; p. 1068, n. 86; p. 1130, n. 77; p. 1133, n. 3 New; p. 1137, n. 24; Duty of railroad to give crossing signals at place not technically a highway crossing, but used as such, see note in 49 L. R. A. (N. S.) 814; 22 R. C. L., pp. 1003, 1004.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Action by Mrs. Ora Duease and another against the Columbus & Greenville Railway Company. Judgment for the plaintiffs, and defendant appeals. Reversed and remanded.

*Chapman, Moody & Johnson* and *Gardner, Odom & Gardner,* for appellant.

Our contention is that under the testimony in this case, the peremptory instruction asked for by appellant should have been granted. There is absolutely no testimony whatever showing, or even tending to show, any negligence on the part of any employee of appellant. The place where the accident occurred was a private

crossing, on a straight track, perfectly plain and open for several miles each way.

. *The crossing is not a highway.* It will be noticed that there was no effort made to show that there were any peculiar or extraordinary circumstances surrounding this crossing known to trainmen, where ordinary prudence would require an alarm or signal to be given by an approaching train. The court will notice in the instructions which we shall cite and discuss hereafter, that the trial court seemed to be under the impression that because this private crossing was maintained by the railroad for the use of the public in the handling of freight and passengers, it was necessary for an approaching train to give the statutory signals, the blowing of the whistle and the ringing of the bell. This, of course, we submit, was erroneous and finds no support either in the statute or any of the decisions of this court construing the statute.

One of the latest announcements of this court, as to the necessity for the ringing of the bell or the blowing of the whistle, under section 4045, Hemingway's Code, is *Columbus & Greenville Ry. Co.* v. *Burnside,* 104 So. 701. In that case an instruction was given predicated upon the fact that the crossing in that case, as in this, was a highway and the statutory signals should have been given. The court reversed the decision of the lower court and held that the evidence was insufficient to support the finding that the road on which Burnside was traveling was a public one, within the purview of the railroad statute. The court quoted with approval the decision of this court in *C. & S. R. R. Co.* v. *Adkinson,* 117 Miss. 119.

The facts in this case do not bring it within the rule announced in *Dillon* v. *I. C. R. Co.,* 111 Miss. 520. See also *I. C. R. Co.* v. *Mann,* 106 So. 7, in which this court holds that where the crossing is not on a highway and there are no peculiar or extraordinary circumstances surrounding the crossing and known to trainmen, it is not necessary that these signals be given. From no

point of view can it be said that this private road was a highway. *Warren County* v. *Mastronardi,* 76 Miss. 273; *Burnley* v. *Mullins,* 86 Miss. 141; *Wills* v. *Reed,* 86 Miss. 446; *C. & S. R. R. Co.* v. *Adkinson,* 117 Miss. 118; *C. & G. Ry. Co.* v. *Burnside,* 104 So. 701.

By reference to the instruction given for the appellees on the *prima-facie* statute, it will be seen that it is squarely in conflict with the very latest, and we think one of the strongest, decisions that has ever been rendered by this court on the *prima-facie* statute. We have reference to *Brown* v. *C. M. & N. R. R. Co.,* 138 Miss. 39, where our court condemned the giving of an instruction very much like this one.

The court will notice that this instruction requires the appellant to produce all of the facts and circumstances, explain all of the facts and circumstances surrounding the killing, and then after having done that, the appellant is further required *to exculpate itself to the entire satisfaction of the jury.* We submit that this instruction is directly in the face of the instructions heretofore condemned in this court, not only in the *Brown case, supra,* but the *McCullers case,* 121 Miss. 666; the *Daniell case,* 108 Miss. 358; and the *Gray case,* 118 Miss. 612.

We also contend that under the facts in this case no instruction whatever should have been given under the *prima-facie* statute because under our "stop, look and listen" statute, in driving upon the track without stopping, looking or listening, as required by the law, the deceased certainly committed an unlawful act under this statute, which was the proximate cause of the injury sued for and cannot be made the basis for an instruction making the railroad company *prima-facie* liable in this case.

It is interesting to note the number of decisions that have been rendered by this court in passing upon this *prima-facie* statute. By reference to the annotations of section 1645, Hemingway's Code, and the reports, it will be found that there are over eighty-seven decisions of this court passing on this statute, which is certainly one

of the plainest and most unambiguous statutes in the code. The fact that there have been so many decisions, passing on and construing this statute, to our mind, is proof positive that there is something radically wrong in the construction of this statute.

The next statute which has been variously construed is the "Business Sign" statute, or section 1300, Code of 1880. This section has forty-seven decisions to its credit, not a close second at all to the *prima-facie* statute.

We believe that when you come to consider again this *prima-facie* statute in the light of the "stop, look and listen" statute, which has been violated, that you will agree with us that it is but common justice and fairness to the railroad company to prohibit the giving of any instruction for either side, under this state, where the testimony shows how the accident occurred and where there is no dispute or contradiction between the witnesses for the plaintiff and the defendant.

Instruction No. 2 is just as erroneous and prejudicial. It will be noted that the jury is told that if it believes, which is not disputed, that a private road leads from a public highway at Purnell, which is true; that appellant maintains a depot and platform for the use of those who desire to leave or board its trains at Purnell; that it maintains a switch or spur track at Purnell for the loading and unloading of freight; that the defendant constructed and had maintained for a long number of years a crossing over its track as a part of this private crossing so built and maintained by the defendant, and which crossing is the only crossing at Purnell; that said road is apparently open to the public to travel at their will, and that said crossing is used with the acquiescence and consent of the appellant—*all of which is admitted and never denied in any way*—then the instruction further provides that, "It is the duty of the defendant to give signals when approaching said crossing for the benefit of those who may be traveling said road." This is new law to us, we must confess. We do not know of any stat-

.ute which requires any signals to be given except at a street or highway.

Instruction No. 3 was improperly given, for the reason that the deceased were not at this crossing for the purpose of attending to any business with the appellant. In other words, appellees were not licensees or invitees for the purpose of transacting any business with the company. The giving of this instruction was erroneous in the light of the testimony in this case.

*Everett & Forman,* for appellees.

I. Counsel's first contention is that a peremptory instruction should have been given because they say: (1) That there is no evidence showing or tending to show negligence on the part of employees of appellant; (2) That the crossing was a private crossing on a straight track, perfectly plain and open for several miles, with no obstruction whatever that would impair the view of the driver of the car.

As to there being no negligence, counsel overlooks the fact that the railroad company maintains a depot, platform and shipping facilities at Purnell and the fact that the railroad itself built and maintains this crossing for the use of the public, there being no other way for them to cross the railroad at this point, that it knew said crossing was so used by the public and in building and maintaining it at its station, it invited the public to use it. And knowing of this use, having invited it, they were under the duty to keep a watch-out at this crossing and to give alarms in approaching it with a fast train. *I. C. R. R. v. Dillon,* 111 Miss. 520.

The conductor, the engineer and the flagman all testified that it was their duty under the law and the rules of their master to keep a watch-out and to blow the whistle and ring the bell for this crossing, but the evidence on the part of the plaintiff shows that no bell was rung or

whistle blown for this crossing or for the one one-fourth of a mile west of it.

II.  Counsel next complains of the court's action in overruling the motion of appellant to exclude the evidence offered by appellee with reference to blowing a whistle or ringing a bell, because the evidence disclosed the fact that the crossing was a private and not a public crossing.  We concede the fact that the road in question is not a public highway under the control of the board of supervisors, but we do not concede that that fact relieves the railroad.  As stated above, the second count in the declaration is based on a common-law duty.

"One entering on a railroad track at a *private* crossing does not forfeit the right to be warned simply because he goes on the track in front of an approaching train."  *Fuller* v. *I. C. R. R.,* 100 Miss. 705.

"It may be safely stated, however, as the weight of authority as well as apparently the better reasoning, that where a road which crossed the railroad is apparently open  to the public and is used by it with the assent or acquiescence of the railroad company, it is its duty to give signals for the benefit of travelers on the highway when approaching such crossing, whether or not the road has been legally established by dedication or prescription."  See also 22 R. C. L., par. 232, pp. 1003-4; *Y. & M. V. R. R. Co.* v. *Watson,* 82 Miss. 89.

Those in charge of the train knew of the Purnell station; they knew of this crossing; they knew this road lead nowhere except across its tracks, the only way to get out.  They knew that this crossing had been built and was maintained by the railroad for the use of the public and that the public habitually used it; and it is immaterial whether it was a public or a private crossing.  *I. C. R. R.* v. *Dillon,* 111 Miss. 521; *Allen* v. *Y. & M. V. R. R.,* 111 Miss. 267, 71 So. 386; 22 R. C. L., par. 233, p. 1004.  And it is for the jury to say, from the evidence, whether or not a proper lookout was kept. *Young* v. *R. R. Co.,* 88 Miss. 446.

We fail to see where counsel get any consolation from *I. C. R. R.* v. *Mann,* reported on suggestion of error, 106 So. 7. This case like the *Adkinson case,* 117 Miss. 118, and the *Burnside case,* 104 So. 701, cited by counsel, was based purely on statutory requirements at public streets and highway crossings, with no count whatever on the common-law liability. Therefore, what was said in overruling the suggestion of error cannot avail them anything in the present case.

III. Counsel next complains of instruction No. 1, given the plaintiff, on the *prima-facie* statute, making an injury inflicted by a running train *prima-facie* negligence on the part of the railroad if unexplained.

We submit that neither the *Brown case,* 138 Miss. 66, nor the cases there referred to, are in any way authorities here for two reasons: (1) The language condemned by this court in the Brown case is not incorporated in the instruction here in question, to-wit: *"and the facts so proved must exonerate the company from blame,"* although counsel argue this instruction as if these words were incorporated in the instruction. (2) The facts and circumstances attending the killing of the Dueases on this occasion are not in evidence, are not explained, and, therefore, the presumption controls and the instruction is proper in this case.

The only thing in evidence in the case at bar is the actual hitting of the Dueases' car. Paxton, the witness for the plaintiff, explained nothing. He simply saw the collision. When he saw the car, it was on the track. The negro, Ed Franklin, introduced by the defendant, saw the car just as it was hit. The engineer, Brown, did not see it until after he struck it. The conductor and flagman did not see anything. Therefore, the presumption prevails and the instruction is proper. See *Y. & M. V. R. R.* v. *Landrum,* 89 Miss. 399; *Mobile, etc., R. R.* v. *Hicks,* 91 Miss. 273; *So. Ry. Co.* v. *Murray,* 91 Miss. 546; *Combs* v. *Mobile, etc., R. R. Co.,* 92 Miss. 532; *Eas-*

*ley* v. *A. & V. R. R.*, 96 Miss. 396; *A. & V. R. R.* v. *Hunnicutt*, 98 Miss. 272; *Fuller* v. *I. C. R. R.*, 100 Miss. 705; *N. O., etc., R. R.* v. *Cole*, 101 Miss. 173; *A. & V. R. R. Co.* v. *Thornhill*, 106 Miss. 400.

IV.   Counsel next contends that this instruction should not have been given under the *prima-facie* statute because: "Under our 'stop, look and listen' statute in driving upon the track without stopping, looking and listening, as required by law, the deceased certainly committed an unlawful act under section 3, chapter 320, Laws of 1924," which however expressly provides: "That the violation of this act shall not affect recovery, and the question of negligence or the violation of this act shall be left to the jury; and the comparative negligence statutes and *prima-facie* statutes of our state shall apply in these cases as in other cases of negligence." See *Gulf, etc., R. R.* v. *Saucier*, 104 So. 180.

V.   They next complain of instruction No. 2, which tells the jury that if there is a private road leading from the highway at Purnell directly across the tracks of defendant, that the defendant maintains a depot and platform for public use and a spur track for loading and unloading freight, that defendant constructed and maintained for a long number of years a crossing over its tracks as a part of this private road and that this crossing, built and maintained by the defendant is the only crossing at Purnell, that is open to the public to travel at will and that it is used with the acquiescence and consent of the defendant, then it is its duty to give signals when approaching said crossing for the benefit of those traveling said road.   Counsel says that this is new law to them.   In this connection we call attention again to *I. C. R. R.* v. *Dillon*, 111 Miss. 520; also *Allen* v. *Y. & M. V. R. R.*, 111 Miss. 267, 22 R. C. L., pp. 1003-1004.

VI.   They next complain of Instruction No. 3, which is taken from *I. C. R. R.* v. *Dillon, supra*, which is a

142 Miss.—46.

complete answer to every objection made to it.
The cause should be affirmed. ·

Argued orally by *C. C. Moody* and *A. F. Gardner,* for appellant, and *Frank Everett,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Appellee Mrs. Ora Duease, for herself and minor son, brought suit against the appellant for the death of her husband and two minor sons, who were killed in a crossing accident at the crossing in Purnell, Leflore county, Miss.

On Sunday morning, August 2, 1925, at about nine o'clock Mr. Duease and his two sons, Truman and Andrew, aged twenty and eighteen years, respectively, left their home in Leflore county, about a mile north of where the accident occurred for the purpose of making a trip to Greenwood. They went southwardly along the plantation road to the right of way of the railway company, and thence turned at right angles east along this right of way a distance of some three hundred feet to the crossing, at what is known as Purnell's switch, a flag stop on the Columbus & Greenville Railway. At this Purnell's switch there is a crossing leading from the north side of the railroad right of way across the track to the gravel road, the main highway, running east and west along the south side of the Columbus & Greenville Railway's right of way. At this crossing the track is perfectly straight, and the right of way cleared several miles each way. The passenger train which struck this automobile was going east, and running at the rate of twenty-five to thirty miles per hour. One of the young men killed was driving the automobile.

There is a dispute in the evidence as to whether the whistle was blown or the bell rung when the train approached this crossing. The engineer testified that the whistle was blown and the bell was rung for this crossing, and that it was his duty on approaching this cross-

ing to blow the whistle and to ring the bell, and that this was done. He testified that his position on the locomotive was on the opposite side of the track from the side the automobile was on, and that the first that he knew of the automobile was an outcry by the fireman just before the train struck the automobile; that, when the fireman gave this alarm, he had his hand on the emergency, and he used the emergency, which was the quickest way to stop the train; that the next thing he saw was the automobile was on the cowcatcher of his locomotive. The fireman whose position was on the side of the locomotive where the automobile could be seen, died a few days before the trial took place, and his testimony had not been taken, and, of course, is not in the record.

A Mr. Paxton was introduced by the plaintiff, and testified that he was traveling from the east toward this crossing called Purnell's switch, and that he was in sight of the crossing, and was walking, going to his home, along the railroad track; that he was walking west and the train was going east. He testified as follows:

"Q. Now, did you see this car that got hit before it was struck? A. No, sir; it was just about the time it was struck when I seen it.

"Q. Tell the jury what you saw on that occasion? A. The train and the car was running pretty close together. Just as the car run up on the track the train hit it.

"Q. Had you seen the train before it struck the car? A. Yes; sir.

"Q. How long before? A. Just a few minutes.

"Q. What signals, if any, did this train give by ringing the bell or blowing the whistle before it struck this automobile? A. Not any at all.

"Q. How far had you seen the train down the railroad before it struck? A. About a mile.

"Q. You were kind of keeping an eye on it as you were walking on the track? A. Yes, sir.

"Q. You say no whistle blew and no bell was rung? A. No, sir. There wasn't none.

"Q. Was any signals at all given by any one to warn any one of the approach of the train before the collision? A. No, sir.

"Q. Were you a mile? A. Yes, sir; I expect a little more, somewhere about a mile.

"Q. About that distance when you saw the train hit the car? A. About two hundred or three hundred yards.

"Q. You didn't see the car until the train hit it? A. No, sir; I just noticed the train.

"Q. You were about two hundred yards from the train? A. Yes, sir.

"Q. The only thing you saw was the car drive up on the track and the train hit it? A. Yes, sir.

"Q. At that time you were about a mile east of the train when you saw it hit the car? A. No, sir.; I was closer than that.

"Q. About a mile from Purnell? A. No, sir; I was closer than a mile when I first noticed the train up the track about a mile from me.

"Q. How far were you from the train when the train hit the car? A. About two hundred or three hundred yards.

"Q. Did you step off to the side to let the train pass? A. No, sir; not until I got right up to it, then I stepped off."

Another witness, a colored man, who lived near the crossing, within about one hundred fifty feet therefrom, testified, among other things:

"Q. Could you see the crossing from where you were standing? A. Yes, sir.

"Q. Is the pump to the east or west of your house? A. On the west.

"Q. Was the house between the pump and the crossing? A. No, sir.

"Q. What did you see? A. When I looked around —I wasn't paying much attention to the train, nohow. I was pumping water. When I looked around it was going to the crossing, I guess about twenty or twenty-

five steps, I seed the car and the train both. I continued to pump on, thought the car would stop on the other side. It hit just that quick (indicating).

"Q. How far was the automobile from the middle of the track when you first saw it? A. It was on the ground about eight or nine steps.

"Q. About how far was the engine from the crossing? A. About twenty or thirty steps.

"Q. Then what happened? Did the engine hit the car? A. Yes, sir; hit the car right then before I could turn back.

"Q. Did the car run up on the track and the engine hit it? A. Yes, sir; that is all I seed. My wife hollered.

"Q. What was the first thing that you saw with reference to the car? A. The train and the car was running right along together, and the car seemed to be a little ahead, and I thought the car would stop over there. Before I could turn my head again the train hit it."

Another witness who lived near could not see the accident on account of a building, but testified that no signal was given on the approach of the train to the crossing.

The testimony shows that Purnell's switch is a flag stop or blind switch, where passengers get off and on by flagging the train, but that the train that caused the injury was not a train that stopped on flag. It showed that the railway company maintains the crossing, which was a private crossing, and that it had a graveled platform on the south side of the railroad track; that at this station there was a spur track, and freight could be loaded and unloaded at this point; that cross-ties were placed on the north side of the railroad track and on the west side of the crossing at the time of the injury. The testimony also showed that the right of way had weeds growing upon it, and that these weeds were cut down after the accident.

There was some conflict in the testimony as to the time this particular train was due to pass this crossing. Ac-

cording to the evidence for the plaintiff it was due to pass there at about eight-thirty a. m. The accident occurred about nine o'clock in the morning. According to the evidence of the railroad company, the train was two minutes behind time when it reached Moorhead, which was four miles west of the point where the accident occurred.

The testimony of the railroad company showed that this train was inspected on the morning before it left Greenville about seven o'clock, and that it was in good condition. The conductor testified that he felt the air applied on the train as it approached Purnell's switch, and that he heard the signals, but he did not know what caused the application of the brakes until the accident occurred.

The engineer testified that, when the fireman called to him, he did everything that could be done to stop the train; that it would require about a distance of seven hundred fifty feet to stop a train. The testimony of another witness placed the distance where the train stopped at about nine hundred feet from the crossing.

In this state of the case the plaintiff was granted the following instruction:

"The court instructs the jury for the plaintiff that, in actions against a railroad company using locomotives and cars propelled by steam and running on tracks, for damages to persons or property proof of injury inflicted by the running of engines or cars is *prima-facie* evidence of the want of reasonable care and skill on the part of the railroad company in reference to such injury, and the railroad company is liable for such injury, unless it overcomes this statutory presumption by explaining all of the facts and circumstances surrounding and causing such injury. And, to overcome this presumption, it devolves upon the railroad company to exculpate itself from blame by establishing to the satisfaction of the jury such circumstances of excuse which will relieve it from any liability. This statutory presumption cannot be overthrown by conjecture. The circumstances of the

accident must be clearly shown. If the facts be not clear-
ly proved, and the attendant circumstances remain doubt-
ful as to how the accident occurred, the company is not
relieved from liability, and the presumption of negligence
controls.   And, unless the defendant has by facts and
circumstances shown by the evidence explained all of the
attendant facts and circumstances surrounding the kill-
ing of E. M., Truman and Andrew Duease on the morn-
ing of August 2, 1925, and exculpated itself from blame
to your entire satisfaction, it is your sworn duty to find
for the plaintiffs and assess their damages at such sum
as you believe from the evidence they have sustained,
not to exceed the amount sued for in the declaration.''

The giving of this instruction is assigned for error.

The statute on which this instruction is based has been
construed in numerous cases. In fact, it is the most liti-
gated statute in our jurisprudence.

In *A. & V. Ry. Co.* v. *Thornhill,* 63 So. 674, 106 Miss.
387, the authorities to that decision were collated, ana-
lyzed, and reviewed, and it was thought that the meaning
of the statute was made clear and plain, but we have had
numerous occasions since that time to apply that statute
to the cases coming before the court. In the Thornhill
case it was held that where the facts and circumstances
under which the injury was inflicted had been ascer-
tained, the presumption of negligence created by the
statute disappears, and that the defendant's negligence
*vel non* must be determined from such facts and circum-
stances; that the *prima-facie* presumption of the statute,
however, is not a specific but a general one; that is, that
negligence is presumed from the doing or. omission of
any act that could have caused the injury, and, conse-
quently, in order that it may be rebutted, the evidence
must disclose the doing or omission of every act from
the doing or omission of which an inference of negligence
*vel non* could be drawn.

The instruction before us, it is said, ought not to have
been given at all because all of the facts and circumstances

surrounding the injury were disclosed by the evidence, and that consequently the liability of the railroad company must be determined entirely from the evidence under the doctrine announced in *A. & V. Ry. Co.* v. *Thornhill,* 63 So. 674, 106 Miss. 387; *A. G. S. Railroad Co.* v. *Daniell,* 66 So. 730, 108 Miss. 358; *I. C. Railroad Co.* v. *Gray,* 79 So. 812, 118 Miss. 612; *Hines* v. *McCullers,* 83 So. 734, 121 Miss. 666; *Davis* v. *Elzey,* 88 So. 630, 89 So. 666, 126 Miss. 789; *Davis* v. *Temple,* 91 So. 689, 129 Miss. 6; *Gulf, M. & N. Railroad Co.* v. *Brown,* 102 So. 855, 138 Miss. 39.

In our view of the case the full facts were not disclosed by the evidence so as to eliminate the application of a *prima-facie* statute. The fireman's testimony would have been very pertinent on the liability under the facts disclosed and as to when he saw the car, if he saw it at all, and what the occupants of the car were doing—as to whether they appeared to have seen the train, or whether they heard the alarm, if any alarm was given.

No witness appears to have seen the car from the time it reached the right of way until it was struck on the crossing, and no witness has been able to state whether or not the fireman discovered the car and its occupants prior to his outcry. The occupants of the car also who were killed could, if living, give information as to facts which are not disclosed in the record.

We think, therefore, that the statute was properly applicable to the case from the facts contained in the present record. The instruction, however, is subject to serious criticism, and, if it was applied to a case where all of the facts were disclosed by the evidence, we would unhesitatingly reverse for the error of statement it contained.

A similar instruction was involved in *G. M. & N. Railroad Co.* v. *Brown,* 102 So. 855, 138 Miss. 39, and was condemned in that case, and the case was reversed because of the giving of such instruction. In that case we said:

"It is not true that the law requires the facts to exonerate the railroad company from blame. The law requires the facts to be produced, and, if the facts are not produced in evidence, the presumption prevails; but, when the facts are produced, the jury must decide the question from the facts, and unless the facts show negligence the plaintiff does not prevail. If there is a conflict in the facts as testified by the different witnesses, the jury must pass upon the conflict, and must determine what the facts are from the evidence. They must decide the question of the veracity of the witnesses so presented. Frequently where the facts are in evidence two or more different reasonable conclusions might be drawn by the jury. In such case it is the duty and province of the jury to apply their minds to the question and to decide which is the more reasonable and probable inference to be drawn from the facts so proven, and they cannot escape this duty of applying their minds to the proposition by adopting the statute as a substitute. The instruction here involved authorized the jury in such case to adopt the presumption of liability. In other words, if all the facts are in evidence and different reasonable conclusions could be drawn therefrom, one favorable to the railroad company and another favorable to the plaintiff, the instruction makes it the duty of the jury to adopt that unfavorable to the railroad company. The statute was intended to have operation only when the facts were not or could not be produced, and places the burden upon the company to produce the facts which are generally peculiarly within its own knowledge."

To like effect are a number of other cases above cited.

It is true that some of the decisions prior to the *Thornhill case,* 63 So. 674, 106 Miss. 387, used language as strong as that used in the instruction here involved, but it will be seen from a reading of the Thornhill case and subsequent cases above cited that these prior announcements were not a correct interpretation of the purpose and meaning of the statute, and, if the statute was given

a construction that would authorize the giving of the instruction here involved in a case where all of the facts were disclosed by the evidence, it would be difficult to uphold it as constitutional. Under the facts in this record, however, we would not reverse the judgment for the giving of this instruction alone.

Instruction No. 2, given for the plaintiff, reads as follows:

"The court instructs the jury for the plaintiff that, if you believe from the evidence in this case that there is a private road leading from the public highway at Purnell, which highway adjoins the right of way of the defendant directly across the tracks of the defendant, and that the defendant maintains a depot and platform for the use of those desiring to board or depart from its passenger trains at Purnell, and that it maintains a switch or spur track for the loading or unloading of freight at Purnell, and that the defendant constructed, and has maintained for a long number of years, a crossing over its said track as a part of this private road leading into the public highway, at Purnell, and that the crossing so built and maintained by the defendant is the only crossing at Purnell, and that said road is apparently open to the public to travel at their will, and that said crossing is used with the acquiescence and consent of the defendant, it is the duty of the defendant to give signals when approaching said crossing, for the benefit of those who may be traveling said road."

This instruction was vigorously challenged by the appellant, but we think the instruction is not erroneous. As we understand it, this instruction undertakes to announce the common-law doctrine applicable to the facts involved in this case. The crossing was not a public highway.

In *Fuller* v. *State*, 57 So. 806, 100 Miss. 811, 39 L. R. A. (N. S.) 242, Ann. Cas. 1914A, 98, the court held that one entering on a railroad track on a private crossing

does not forfeit the right to be warned simply because he goes on the track in front of an approaching train.

In 22 R. C. L., pp. 1003, 1004, it is said: "It may be safely stated, however, as the weight of authority, as well as apparently the better reasoning, that where a road which crosses a railroad is apparently open to the public, and is used by it, with the assent or acquiescence of the railroad company, it is its duty to give signals for the benefit of travelers on the highway when the approaching such crossing, whether or not the road has been legally established, by dedication or prescription."

In *Y. & M. V. Railroad Co.* v. *Watson*, 33 So. 942, 82 Miss. 89, the court said: "On the contention that this was a private plantation road and crossing, and the company, therefore, was under no obligation to maintain it, it is sufficient to say that the question of permanent maintenance is not involved. It knew the road was used by the public, and, whether technically a public or private road, it undertook to build the approaches to its track, knowing the public use of it, and should not have made them so as to be dangerous for travel by teams and vehicles managed with ordinary care."

In *I. C. Railroad Co.* v. *Dillon*, 71 So. 809, 111 Miss. 520, the court said: "In considering what duty was owed by the appellant to the deceased in this case it is necessary to view the facts and circumstances relating to the use of this crossing or footpath by pedestrians over the track. The testimony in the record shows that, while Foote street was closed so far as vehicles were concerned, pedestrians continued to use the same just as they had used it before it was vacated or closed. That every morning between the hours of six and seven o'clock employees of certain mills situated on the east side of the track crossed this railroad track at this particular place. This fact certainly must have been well known to the defendant railroad company, and by all the laws of justice and humanity they are charged with this knowledge. There was no protest of any kind by the defendant company of

this use of the old street by pedestrians. In fact the record shows that a plank had been placed over a ditch on one side of this crossing and had been fastened down to hold the same for the convenience of pedestrians using the same. This being true, we regard this as a very different case from the *Arnola case* in 29 So. 768, 78 Miss. 787, 84 Am. St. Rep. 645, relied upon by counsel for appellee. In fact, the deceased in this case was more than a bare licensee; he was an invited licensee, sometimes called an invitee or a favored licensee, and the railroad company owed him the same duty that it owes to one on its tracks at a public or other crossing; namely, the duty not to negligently kill or injure. The question of contributory negligence of the deceased was properly submitted to the jury.

"While the railroad company was under no statutory duty to sound alarms for this crossing, at the same time it is our opinion that its common-law duty required the engineer to give signals of his approach to this much-used crossing, especially is this true when the engineer knew that he was approaching this crossing at a rapid rate of speed with a backing engine at the hour when between one hundred and fifty and two hundred people crossed it. In fact, their failure to give these signals, coupled with the fact that the engine was backing at a rapid rate of speed and that the engineer could not see anything in front of his engine within two or three car lengths, in our opinion, makes out a case of negligence under the common law, which should have been submitted to the jury. In this case the conduct of the railroad company was an implied invitation to pedestrians to use this crossing. *Allen* v. *Y. & M. V. R. Co.,* 71 So. 386 [111 Miss. 267]. This case is very different from one where only a few people are in the habit of crossing the railroad track at a certain point not at a public crossing, as was the case in that of the *McCoy case,* in 63 So. 221, 105 Miss. 737. On account of the obstructions, above set forth, to one approaching the railroad and to employees

upon engines and trains of the railroad, it was the duty of both the pedestrians and of the railroad employees to be more careful to maintain a proper lookout when approaching this crossing."

See, also, *Allen* v. *Y. & M. V. Railroad Co.,* 71 So. 386, 111 Miss. 267.

The hypotheses embraced in the instruction in the case before us make a situation which calls for the application of the common-law rule of reason of doing whatever was appropriate and proper at the time. We think there was no error in this instruction.

The appellant next complains of instruction No. 3, given for the plaintiff, and which reads as follows:

"The court further charges the jury that, where the railroad company maintained a depot and platform for the receipt and discharge of passengers and freight, and a private road crosses the tracks of the defendant immediately adjoining the platform of the depot, so maintained by the defendant, and the defendant has built, and maintained for many years, and still maintains, a crossing over its said tracks where the private road crosses its said railroad tracks, the railroad is charged with knowledge of the use of the crossing, and, though one who is using it and is injured may only be a licensee, the company owes him the same duty it owes one crossing at a public crossing."

This instruction is erroneous, and for the giving of it we must reverse the judgment. There is a difference between the signals required to be given by statute and the signals required at common law to be given on approaching a place such as here involved.

In the case of *Y. & M. V. Railrod Co.* v. *Lucken,* 102 So. 393, 137 Miss. 572, we discussed the difference somewhat between a public crossing and a private crossing, and reversed the case because the court gave a peremptory instruction that the highway there involved was the public highway, and the evidence with reference thereto was conflicting, and we said:

"However, we think it was error on the facts in this record for the court to peremptorily instruct the jury that the crossing in question was a public crossing. We think that that is a controverted issue of fact in this case, there being direct and positive testimony for the defendant that it was not a public crossing, and there is a difference in the duty of the railroad company on approaching a public highway and on approaching a private highway where people habitually travel. In the case of a public highway the statute requires the giving of signals regardless of whether persons are seen or not in a position of danger. In other words, under the statute it is the duty of the railroad company to give the signals on approaching a public crossing at all events, and, if a person is injured by reason of a failure to give such signals, the railroad company will be negligent as a matter of law. But in the case of a private crossing which people habitually travel, the duty of a railroad company to give signals would depend upon the circumstances existing at a particular time."

A railroad company in the case of a public highway owes the duty to every traveler to blow the whistle or ring the bell for a distance of at least three hundred yards before reaching the crossing, and to keep the whistle continuously sounding or the bell ringing until the locomotive has crossed such highway. The statute is mandatory and arbitrary. It must be done without regard to appearances of safety. The statute does not require this to be done at a private crossing, and there is no arbitrary rule with reference thereto. The rule of the common law is the rule of reason. The rule of the statute is imperative and arbitrary, and to say that a railroad company owes the same duty at the crossing here involved that it owes at a public crossing is to impose a liability which the law has not imposed in certain circumstances. The common law requires that to be done which ought in reason to be done, regardless of the three hundred-yard limit. It does not require that to be done which reason and appearances do not make necessary to be done.

In the case before us this instruction may have turned the scale with the minds of the jury upon the question of liability.

For the error of giving this instruction the judgment must be reversed and the cause remanded.

*Reversed and remanded.*