BRINKLEY *v.* EATON.

In Banc. Mar. 28, 1949.

(39 So. (2d) 491)

Hugh N. Clayton, for appellant.

Robert B. Smith and E. K. Windham, for appellee.

**McGehee, C. J.**

This suit is brought in the Chancery Court by the appellant, Will J. Brinkley, for injunctive relief against the appellee, C. O. Eaton, and for the recovery of damages which are claimed to have been sustained on account of the alleged diversion of waters by the defendant from his lands onto the lands of the complainant.

At the conclusion of the evidence offered by the complainant, including the testimony of the defendant who was introduced as an adverse party under the authority of Section 1710, Code of 1942, with the right of con-

tradicting him, the trial court sustained a motion of the defendant to exclude the evidence and render a decree in his favor dismissing the bill of complaint. And it appears that all of the material facts on the issues involved were developed both pro and con on the questions involved in the presentation of the complainant's case.

The proof discloses that the defendant Eaton owns more than 100 acres of land which is bounded on the east by the Dry Creek Canal, an artificial water channel, which was constructed during the year 1912; that the complainant owns 88 acres of land to the west and immediately adjacent to that of the defendant; that one Barnett, who is not a party to the suit, owns approximately 100 acres of land lying to the north of that of the defendant and immediately adjacent thereto; that the complainant also owns 100 acres of land lying immediately north of his 88-acre tract and west of that belonging to Barnett and adjacent thereto; that for many years and long prior to the year 1912 the Hastings' spring branch, a natural water course, flowed from the hills which were west of the complainant's 88-acre tract of land, and across the said tract and into the land of the defendant, and then turned northward into a slough which began on the land of the defendant, near the north boundary thereof, and extended across the southwest portion of the Barnett land to the 100-acre tract of the complainant lying immediately west of the Barnett land; and that during the year 1912 when the Dry Creek Canal was dug, or shortly thereafter, there was also cut an artificial ditch on the defendant's land, from where the Hastings' spring branch at that time turned northward into the slough, so as to carry the water from the branch eastward to the said Dry Creek Canal.

The proof further discloses that after the defendant purchased his land from one Pollard in 1941, and cleared the same and put it in cultivation, the ditch extending from where the Hastings's spring branch turned northward into the slough on said land to the said Dry Creek

Canal became filled up with sand and other obstructions caused largely by overflow waters from the said Dry Creek Canal, and that this caused the waters from the Hastings' spring branch to again follow its former natural course northward into the slough; that the defendant thereupon cut another ditch across his land from near the said point on the spring branch and into the Dry Creek Canal but that this additional ditch likewise was caused to fill up and failed to carry the waters from the turn in the spring branch to the said Dry Creek Canal; that the defendant cleaned out these ditches several times and did all that he could to keep the waters flowing through them to the Dry Creek Canal, but without avail; and the trial court so found this to be a fact, from a preponderance of the testimony offered at the trial.

It further appears that on account of the fact that the lands in the vicinity where the spring branch had formerly turned northward into the slough were lower than that along the west bank of the Dry Creek Canal, and also on account of the further fact that the Dry Creek Canal had itself become partially filled up, the defendant was unable to prevent the waters from the western hills which came through the spring branch from following their former natural course northward into the slough, and causing the slough to become filled with water so as to overflow onto the 100-acre tract belonging to the complainant west of the Barnett land, on which the damages complained of are alleged to have been occasioned; that it was not until after the waters from this spring branch had already changed their course northward into the slough across the land of the defendant that he dug two small ditches in a northerly direction from points on the branch and over his own land so as to converge into the slough. It is the digging of these two ditches and the banking of some of the dirt therefrom at the western end of the ditch which had formerly extended eastward into the Dry Creek Canal (but which had theretofore almost filled up according to the proof

in the case) that is complained of as the basis for recovery of the damages to complainant's 100-acre tract of land, and for which he seeks injunctive relief against the defendant to compel him to restore the status which existed before the ditch, which extended eastward into the Dry Creek Canal, had become largely filled up.

We are of the opinion that in view of the topography of defendant's land and the fact that the complainant's 100-acre tract of land is lower than the lands near the Dry Creek Canal, it would impose too great a burden on the defendant to require him to restore and to keep cleaned out the former ditch which extended eastward into Dry Creek Canal, and which he had cleaned out as many as five times a year during 1941 and 1942 in an unsuccessful attempt to keep the waters of the spring branch flowing eastward to the said Dry Creek Canal, instead of allowing these waters to follow their former and natural northward course into the slough.

The two small ditches dug by the defendant from points on the spring branch northward into the slough over his own land were evidently dug for the purpose of confining within narrow limits the waters which would otherwise spread out over his land from the branch into the slough before these ditches were dug, this being the natural inference in the absence of any proof to the contrary.

In the case of Illinois Central R. Co. v. Miller, 68 Miss. 760, 10 So. 61, relied on by the complainant, the Railroad Company had constructed a long levee which stopped the natural flow of surface waters across a wide area, collected them in a ditch, and diverted the same in a manner which was unnatural so as to cause damage which would not have otherwise occurred. Therefore, we do not think that this case or the other decisions which announce the principles of law relied upon by the complainant are controlling under the facts of the present case. On the other hand, we are of the opinion that an owner of land is not required, where he has constructed an artificial drain wholly on his own land, to

maintain the same when the subsequent acts of nature place an unreasonable or impossible burden on him to do so, and for the purpose of preventing waters from seeking their natural level and following a different course due to causes beyond the control of such landowner. Compare 67 C. J. 873, et seq., on "Rights in Artificial Drains"; American Sand & Gravel Co. v. Rushing, 183 Miss. 496, 184 So. 60, and the cases therein cited; also Indian Creek Drainage Dist. No. 1 v. Garrott, 123 Miss. 301, 85 So. 312. See especially those cases for the principles of law applicable to the issue involved in the instant case. Holman v. Richardson, 115 Miss. 169, 76 So. 136, L. R. A. 1917F, 942; Steed v. Kimbrough, 197 Miss. 430, 19 So. (2d) 25.

It appears that a greater portion of the water which overflowed the farm lands of the complainant during the years complained of came from the overflow of the Dry Creek and Hatchie Drainage Canals, and it could not therefore be determined with reasonable certainty what portion of such damages was caused by waters from the Hastings' spring branch, even if the complainant was entitled to recover damages for the acts of the defendant herein complained of. But as hereinbefore stated, we are of the opinion that the complainant is not entitled to recover damages or obtain the injunctive relief prayed for under the facts and circumstances of this case.

██ Nor do we think that there was any reversible error committed by the trial court in refusing to visit the land for a view of the premises in question, since this was a right to be exercised or not in the discretion of the trial judge when found expedient or necessary to a proper understanding of the issues of fact involved.

We are therefore of the opinion that the decree of the trial court should be affirmed.

Affirmed.