ILLINOIS CENTRAL RAILROAD COMPANY, et al. *v.*
McDANIEL, ADMX., et al.

No. 42473          April 15, 1963          151 So. 2d 805

*Crawley, Brooks & Guyton,* Kosciusko; *Joseph H. Wright, John W. Freels, Wence F. Cerne,* Chicago, Ill., for appellants.

*Chatwin M. Jackson, Jr.,* Kosciusko, for appellees.

604

KYLE, J.

The complainants, Claudine Bush McDaniel, Administratrix of the Estate of Grady Purnell McDaniel, deceased, and Claudine Bush McDaniel, individually, and her four minor children, who appear and sue by their mother and next friend, filed their original bill of complaint in the Chancery Court of Attala County against the defendants, Illinois Central Railroad Company and J. E. Brown, locomotive engineer, for the recovery of damages under the wrongful death statute for the death of Grady Purnell McDaniel, the husband of Claudine Bush McDaniel and the father of the four minor children, who was killed on August 4, 1960, at a railroad crossing approximately one-half mile east of the McAdams post office in Attala County, when a freight train belonging to the defendant Railroad Company collided with an automobile owned and being driven by R. C. Sallis, in which the complainants' decedent was riding as a guest.

The bill of complaint was a bill for attachment in chancery against the Railroad Company, a nonresident corporation, doing business within the State of Mississippi, and its resident engineer, as defendants, and W. P. Murdock, station agent of the Railroad Company at Kosciusko, Mississippi, as a resident defendant having in his possession money and effects of the Railroad Company.

The bill of complaint alleged that the accident occurred at a railroad crossing near St. Johns Baptist Church, located approximately 40 feet south of the Railroad right of way, on a road running southwardly from a county-maintained highway to the church; that the crossing had been used by the general public for a

period of more than thirty years and constituted the only means of vehicular access to the church and the only means of vehicular access to Jacob's Chapel public school, located on a lot adjacent to the church, prior to its abandonment during the summer of 1959, and that the general public had acquired an easement by prescription for the use of the public over and across the railroad track at said crossing. The bill of complaint further alleged that the Railroad Company had allowed its right of way on the south side of the track and immediately east of the crossing to become grown up with tall weeds, bushes and trees to such extent as to obstruct the view of the driver of a motor vehicle approaching the crossing from the south, so that it was impossible for such driver to see a train approaching the crossing from the east, and that the condition was such that the engineer and fireman of a train approaching the crossing from the east could not see a vehicle approaching the crossing from the south until such vehicle was within ten feet of the southernmost iron rail. The complainant further alleged that the condition of the right of way was extremely hazardous, and that the hazardous condition of the right of way was well known to the agents, servants and employees of the defendant Railroad Company.

The bill of complaint further alleged that the defendant engineer, J. E. Brown, who was engineer in charge of the train which struck and killed the deceased, negligently failed and omitted to sound the train whistle 900 feet prior to reaching the crossing, and negligently failed and omitted to ring the bell of the locomotive, as required by the statute; and that he negligently failed to perform his common law duty of giving signals to warn persons using the crossing of the approaching train. The complainants further alleged that the deceased was killed as a direct and proximate result of the negligence of the defendant Railroad Company in failing to so

maintain its right of way as to eliminate the obstruction to the view of the public using the crossing, and in failing to maintain the crossing in a reasonably safe condition for the traveling public and persons using the crossing; and the negligence of the defendant Railroad Company and the defendant engineer in failing to perform the common law duty resting upon them to give such warnings of the approaching train as was necessary in the exercise of reasonable care to avoid injury to persons at the crossing; and in failing to sound the locomotive whistle and ring the bell in the manner required by the statute.

The record shows that a summons was issued for the defendant Railroad Company to be served on W. P. Murdock, its depot agent at Kosciusko, on December 3, 1960; and that the summons was duly executed by the sheriff on December 5, 1960; that a summons was duly issued for and was served on the defendant, J. E. Brown, on December 8, 1960; and that a summons was also issued for the defendant, W. P. Murdock, on December 3, 1960, which recited that the suit was a suit praying an attachment of the moneys and effects belonging to the Railroad Company in his hand and in his possession as station agent of the defendant Railroad Company at its depot in Kosciusko. The summons for Murdock also directed that a certified copy of the bill of complaint be served upon him, along with the summons, and that the sheriff attach all moneys and effects in the hands and possession of Murdock belonging to the Railroad Company. The sheriff's return showed that the summons had been duly executed on December 5, 1960.

At the January 1961 term of the court the defendant Railroad Company filed a motion to quash and dismiss the processes issued in the cause and to vacate the attempted attachment made by virtue of the processes on the grounds: (1) That the defendant Railroad Company was a foreign corporation with its home office in

Chicago, Illinois, and that no copy of the summons served on the depot agent on December 5, 1960, was ever mailed by the clerk to the home office by registered mail, as required by Section 5346, Code of 1942, Rec.; (2) that publication of summons for the defendant Railroad Company was never made at any time in any newspaper, as required by Section 2733, Code of 1942, and a copy of the summons was never mailed to the defendant at its post office address, as required by Code Section 1853; and (3) that no writ of attachment, garnishment or sequestration was ever issued, levied or returned, other than by serving a copy of the bill on the defendant, W. P. Murdock. On the same date W. P. Murdock filed an answer as garnishee, and the defendant, J. E. Brown, filed a motion to transfer the cause to the circuit court and for additional time within which to answer.

On January 10, 1961, the chancellor entered an order overruling the motion of the defendant Railroad Company to quash the process and dismiss the suit. On the same day the defendant Railroad Company filed a motion to transfer the cause to the circuit court and for additional time to answer. The chancellor overruled the defendants' motions to transfer the cause to the circuit court, but sustained the defendants' motions for additional time to answer.

The cause was heard by the chancellor in vacation by agreement of the parties. The hearing was begun on May 2, 1961, and was concluded on May 9, 1961, when the court of its own motion announced that it would reopen the case and go to the scene of the accident for the purpose of viewing and inspecting the scene. The defendants interposed an objection to the proposed action of the court on the ground that there had been material changes in the scene of the accident due to seasonal differences and other changes, and on the ground that the material facts had already been sufficiently presented by way of photographs, maps, dia-

grams and testimony of witnesses. The objection was overruled, and an order was entered upon the minutes providing for such view and inspection, and the whole organized court, consisting of the judge, clerk, sheriff and court reporter, and the parties complainant and defendant and their attorneys, proceeded to the scene of the accident to view and inspect the same. Both parties were permitted to introduce evidence at the scene of the accident, all of which was made a part of the record.

The chancellor took the case under advisement for rendition of a decree in vacation, and on October 2, 1961, the chancellor dictated into the record his findings of fact and his conclusions of law.

The chancellor found that the accident occurred on August 4, 1960, at about 2:15 P.M.; that the crossing at which the accident occurred was a road running southwardly across the railroad track to St. Johns Baptist Church, which was frequently used by the public; that the freight train which collided with the automobile in which the appellants' decedent was riding was running about one hour late at a rate of speed, according to the engineer, of 28 miles per hour, and according to other witnesses, about 35 miles per hour; that just before the collision occurred R. C. Sallis, the owner and driver of the automobile, his wife and the deceased Grady Purnell McDaniel, who was an invitee, got into the automobile at the church 115 feet south of the center line of the railroad track and were driving north with the intention of crossing the railroad; that the driver of the automobile stopped once between the church and the crossing and looked and did not see or hear a train approaching, or the whistle or bell ring; that the driver proceeded up to the crossing and saw the train coming from the east very close to the crossing, and stopped with his wheels south of the south rail of the railroad track but with his bumper protruding over

the south rail. The chancellor found that at the time
Sallis stopped his car he was not able to get in reverse
gear and get back off of the railroad track before the
train hit the automobile.

The chancellor found that the Railroad Company had
negligently allowed its right of way to become over-
grown with tall bushes, so that Sallis could not see the
train as he was approaching the track. The chancellor
found that the train was 350 feet east of the crossing,
directly in front of Lawrence Hudgins' residence, lo-
cated on the north side of the railroad track, when
the whistle was blown the first time and the bell began
to ring; that if the Railroad Company had sounded the
whistle 900 feet east of the crossing, as required by
law, the driver of the automobile would have had time
to stop his car and the collision would have been avoid-
ed; and that the negligence of the Railroad Company
in not sounding the alarms at a proper distance from
the crossing was the cause of the collision. The chan-
cellor found that the condition of the right of way of
the defendant Railroad Company at the crossing had
been allowed to get in a more than ordinarily dangerous
condition, and that the deceased was killed as a direct
and proximate result of the negligence of the defend-
ants, which consisted of: (a) The failure of the Railroad
Company to so maintain its right of way as to eliminate
the obstruction of the view of the public using the
crossing, and its failure to maintain the crossing in
a reasonably safe condition for the traveling public
and persons using the crossing; (b) the failure of the
Railroad Company, acting by and through its employee,
J. E. Brown, and the failure of J. E. Brown personally
and individually, to perform their common-law duty to
sound adequate warnings of the approaching train so
as to warn motorists approaching the crossing; and
(c) the failure of the Railroad Company and its engineer,
J. E. Brown, personally and individually, to sound the

locomotive horn and ring the locomotive bell in the manner required by statute. The chancellor found that, by reason of the above mentioned negligent acts of the defendants, the plaintiff was entitled as a matter of law to damages for the wrongful death of the decedent, and that the amount of damages which they were entitled to have awarded to them was $20,000.

A decree was therefore entered in favor of the complainants against the Railroad Company and the defendant J. E. Brown for that amount. W. P. Murdock, the agent of the defendant Railroad Company, was ordered to turn over and surrender to the sheriff all of the items of personal property levied on under the writ of attachment; and a lien was impressed against the real property described in the decree belonging to the defendant Railroad Company, for the purpose of satisfying the judgment.

From that decree the defendants have prosecuted this appeal.

The first points argued by the appellants' attorneys as ground for reversal of the decree of the lower court are: (1) That the chancellor erred in retaining jurisdiction of the suit for the reason that no valid attachment of the effects of the nonresident defendant Railroad Company in the hands of W. P. Murdock, its station agent at Kosciusko, was ever made, and there was no publication of summons for the defendant Railroad Company, as provided for in Section 2733, Code of 1942, Rec.; (2) that the writ of attachment issued and levied on the real property of the Railroad Company was invalid for the reason that the motion of the complainants for leave to amend their bill of complaint and ask for an attachment of the real property was not sworn to; and (3) that the appellants were entitled to a jury trial in the circuit court.

(Hn 1) We think there is no merit in the appellants' contention that the chancellor erred in retaining juris-

diction of the suit for the reason that no valid attachment of the effects of the nonresident defendant Railroad Company in the hands of W. P. Murdock, its station agent, was ever made, and there was no publication of summons for the defendant Railroad Company, as provided for in Section 2733, Code of 1942, Rec. The service of the writ of attachment on the resident defendant W. P. Murdock, station agent of the defendant Railroad Company at Kosciusko, as provided for in Code Section 2730, was sufficient to bind the money and effects of the defendant Railroad Company shown to have been in the hands of the resident defendant Murdock, station agent, at the time the writ was served, and the service of summons for the defendant Railroad Company on W. P. Murdock, its station agent at Kosciusko, as provided for in Section 1866, Code of 1942, Rec., was sufficient to bring the defendant Railroad Company into court. Alabama & Vicksburg Ry. Co. v. Bolding, 69 Miss. 255, 13 So. 844; Gridley, Maxon & Co. v. Turner, 179 Miss. 890, 176 So. 733; Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438. (Hn 2) When a summons is served on the authorized agent of a corporation, it is served on the corporation. Alabama & Vicksburg Ry. Co. v. Bolding, supra. It was not necessary that publication be made for the defendant Railroad Company, as provided for in Section 2733, Code of 1942, Rec.

(Hn 3) We also think there is no merit in the appellants' contention that the writ of attachment issued and levied on the real property of the Railroad Company was invalid for the reason that the motion of the complainants for leave to amend their bill and ask for an attachment of the real property of the defendant Railroad Company was not sworn to. The jurisdictional facts which constituted the grounds for attachment in chancery had already been stated in the bill of complaint, in which the complainants had alleged that the defendant Railroad Company was a nonresident corporation en-

gaged in the operation of a line of railroad in and through Attala County, and that the defendant Railroad Company owned a line of railroad track, station houses and other real property, and various station house equipment, office supplies, furniture and money, which was in the care, custody and control of W. P. Murdock, its station agent at Kosciusko. The bill of complaint had been duly sworn to; the court had acquired jurisdiction of the subject matter and of the parties at the time the complainants filed their motion for leave to amend; and the court had a right to grant the complainants' request for leave to amend and to order the issuance of the supplemental writ of attachment, which appears from the record to have been properly executed in the manner prescribed by the statute.

(Hn 4) There is likewise no merit in the appellants' contention that they were entitled to a jury trial in the circuit court. That point has been definitely settled by prior decisions of this Court. See Matthews et al. v. Thompson et al., 231 Miss. 258, 95 So. 2d 438, and cases cited.

(Hn 5) It is next argued that the chancellor erred in ordering a view of the scene and in proceeding to the scene of the accident to view the premises before rendering judgment in the case. But we think that it cannot be said that the chancellor abused his discretion in ordering a view of the scene of the accident under the facts disclosed by the record in this case. The chancellor had a right under the statute (Sec. 1800, Code of 1942, Rec.), to visit the scene of the accident, if in his discretion he found it expedient or necessary to a proper understanding of the issue of facts involved. Brinkley v. Eaton, 205 Miss. 815, 39 So. 2d 491.

(Hn 6) The main point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court is, that the lower court erred in holding that the defendants were guilty of negligence proximately

contributing to the injury and death of the complainants' decedent; that the chancellor erred in his finding that the defendant Railroad Company was negligent in allowing its right of way immediately east of the crossing to become overgrown with bushes to such extent as to render the crossing more than ordinarily dangerous; and that the chancellor erred in his finding that the defendant Railroad Company and its engineer were negligent in failing to give the warning signals required by Section 7777, Miss. Code of 1942, Rec., as the train approached the crossing, and in failing to discharge their common-law duty to sound adequate warnings of the approaching train.

But we think there is ample evidence in the record to support the chancellor's finding that the condition of the right of way of the defendant Railroad Company had become more than ordinarily dangerous as a result of the negligence of the Railroad Company in allowing its right of way immediately east of the crossing to become overgrown with bushes and undergrowth to such extent as to obstruct the view of motor vehicle operators approaching the crossing from the south.

The chancellor had before him numerous photographs showing the condition of the railroad right of way immediately east of the crossing which had become overgrown with bushes and tall weeds at the time the accident occurred; and several witnesses testified concerning the inability of a motorist approaching the crossing from the south to observe the approach of a train from the east, the direction from which the train in this case was coming.

R. C. Sallis, the driver of the automobile in which the decedent was riding at the time of the accident, testified that he could not see up the railroad track in the direction from which the train was coming until he reached a point where he could see around a telephone pole, which was shown in a photograph identified as

Sallis' Exhibit 1, and a line of bushes growing on the right of way, and when he reached the point where he could see up the track the train was almost at the crossing.

Fred D. Little, who was making repairs on the church the day the accident occurred, testified that the driver of a motor vehicle approaching the crossing from the south could not see up the track in the direction from which the train came until he passed the line of bushes and the telephone pole mentioned above.

Lawrence Hudgins, who had served two terms as justice of the peace and whose home was situated about 350 feet east of the crossing, testified that the weeds, bushes and small trees growing on the railroad right of way were so thick that a person standing in the middle of the railroad track between the rails, directly in front of his house, could not see the church or the trunk of the large oak tree standing on the church lot. The defendant engineer, J. E. Brown, who was called to testify as an adverse witness by the complainants, testified that there were bushes growing along the edge of the right of way in a line parallel to the railroad at a distance of eight or ten feet from the end of the crossties, and that he did not see the approaching automobile until his engine was about 250 feet from the crossing.

In 74 C.J.S., 1306, Railroads, Sec. 711, it is said: "The test of whether a railroad crossing is unusually dangerous has been said to be the ability of the traveler to observe the approach of a train from the direction in which it is coming; * * *."

After a careful reading of the testimony, we think that it cannot be said that the chancellor erred in his finding that the condition of the right of way at the crossing was more than ordinarily dangerous.

There was a sharp conflict in the testimony of the plaintiffs' witnesses in this case and the testimony of the members of the train crew as to the sounding

of the locomotive whistle and the ringing of the bell, as the train approached the crossing. J. E. Brown, the defendant engineer, testified that he started blowing his whistle about 1000 feet from the crossing, that he blew the cross-signal, two longs, one short and a long; and when he finished blowing his whistle he was just about on top of the crossing. He stated that he started his bell ringing just before he blew his whistle; that he was running his train down-grade at a rate of speed of about 28 miles per hour; and that he had no power on at the time he reached the crossing. Brown stated that the accident occurred about 2:15 P. M.; that he was due at McAdams at 1:15 P.M., and his train was running late.

R. C. Sallis, who was driving the car in which the decedent was riding, testified that he stopped his car before he got to the railroad track and tried to look up and down the track, but his view was obstructed by the bushes which had grown up along the railroad right of way east of the crossing. He then eased up and stopped again. He saw the train and shifted his gear into reverse immediately; but the train hit the front end of the bumper before he could back away from the crossing. He did not hear the train approaching before he reached the crossing. Fred D. Little testified that he was removing window facings on the inside of the church to put up sheet rock when R. C. Sallis and his wife and Grady McDaniel left the church building, and within three or four minutes he heard the noise of the train; that he ran to the back of the church, and as he looked out he saw the Sallis automobile springing on the track. The train was very close, and he knew that the train was going to hit the automobile. Little stated that he heard the train whistle when it was between Mr. Russell's house and Mr. Hudgins' house. It whistled only that one time. He did not hear the bell at any time. The train was running at a rate of speed of about 25 miles

per hour. It was running on a down-grade, and made less noise for that reason. He did not hear the noise the train was making until he heard the whistle.

Lawrence Hudgins testified that at the time the accident happened he was sitting in his front living room at home reading a newspaper. The windows and doors were opened. The train blew its whistle right in front of his house and the train made a racket when the engineer applied the brakes, and began to slow down. Hudgins stated that the train was right in front of his house when he heard the whistle. The whistle was sounded only one time. The engineer applied his brakes shortly after the whistle was blown. The train was traveling on a down-grade. Hudgins stated that, ''They ease in there lots of times, and you don't know they are there.'' Hudgins' best estimate of the speed of the train was 35 or 40 miles per hour. Mrs. Lawrence Hudgins testified that she was on the bed in the front room of her home next to the railroad track when the train passed. She heard the whistle when it was right in front of her house. She heard the whistle blow one time, and she heard the train stop. Mrs. Martha Russell, who lived in a house about 100 feet east of the crossing, testified that she was sitting in her kitchen on the east side of her house when the train passed. She heard it when it came to a stop, but she did not notice the train whistle when it passed her house.

W. C. Burney, the locomotive fireman, testified that as the train approached the church crossing the bell was ringing and the whistle blowing, as if the crossing were a public crossing. The bell started ringing about 900 feet before they got to the church crossing, the whistle signal was given, two longs, one short and a long. The engine of the train was about 250 feet from the crossing when he first saw the automobile at the crossing. Burney stated that the railroad track ran down-grade from the top of a hill just east of McAdams,

and that the power was cut off and the train was coasting at the time he and the engineer first saw the automobile. Burney admitted that the train made less noise while it was coasting than it would have made if it had been pulling under power. B. F. Keen, the brakeman, and J. B. Vaughn, the flagman, testified that the statutory signals were given.

As stated above, there is ample evidence in the record to support the chancellor's finding that the condition of the railroad right of way at the crossing was such as to make the crossing more than ordinarily dangerous. The engineer and other trainmen knew of the condition at the crossing; and under these circumstances ordinary prudence required that a warning be given of the approach of the train for the benefit of persons using the crossing, and that the warning be reasonable and timely. The chancellor found that the train was within approximately 350 feet of the crossing when the whistle was blown the first time and the bell began to ring, that the warning was insufficient to be effectual for the purpose intended, and that the negligence of the railroad company and its engineer in failing to sound the alarm at a proper distance from the crossing was the cause of the collision.

(Hn. 7) We think that it cannot be said that the chancellor was manifestly wrong in his finding that the defendant Railroad Company and its engineer were negligent in failing to discharge their common-law duty to give reasonable and timely warning of the approach of the train for the benefit of travelers at the crossing, and in failing to give the warning signals required by the statute. It is the duty of a railroad company to give its signals at a sufficient distance to be effectual for the purpose intended. 44 Am. Jur., 756, Railroads, Sec. 513.

In 44 Am. Jur., 760, Railroads, Sec. 516, it is said: "A statute requiring the giving of signals at railroad

crossings does not apply to private crossings, but a railroad is bound to exercise reasonable care in the operation of its trains to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen, ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. So, in the case of a private crossing which people habitually travel, the duty of a railroad company to give signals would depend upon the circumstances at the particular time."

In the case of Illinois Central Railroad Co. v. Mann, 141 Miss. 778, 106 So. 7, the Court said: "At common law 'a railroad is bound to exercise reasonable care in the operation of its trains and to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common-law principles.' 27 R. C. L. 1004."

(Hn 8) It is argued, however, that the driveway involved in this action served only the church; that the public officials of the county did not maintain the driveway as a public road, and for the reasons thus stated the defendant Railroad Company and its engineer were under no duty to sound the statutory signals required by Section 7777, Miss. Code of 1942, Rec., as the train approached the crossing. But, whether the crossing is to be regarded as a public crossing or not, it was a crossing open to the public and used by the public for a period of approximately thirty years, with the assent and acquiescence of the Railroad Company. These facts were known to the members of the train crew, and it

was the duty of the Railroad Company and its employees to give reasonable and timely warning of the approach of the train for the benefit of travelers at the crossing. Columbus & G. Ry. Co. v. Duease, 142 Miss. 713, 108 So. 151.

The chancellor in this case was the trier of the facts; and after a careful review of the testimony we think that it cannot be said that the chancellor erred in his finding that the defendants were guilty of negligence which proximately contributed to the injury and death of the complainants' decedent. We find no reversible error in the record and the decree of the lower court is affirmed.

Affirmed.

*Lee, P. J., and Gillespie, McElroy and Jones, JJ.,* concur.